JOHN W. PRENTISS *vs.* CITY OF GLOUCESTER & others.

Essex.   January 13, 1920. — May 21, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CARROLL, & JENNEY, JJ.

*Way,* Private.   *Easement.   Deed,* Implied grant of right of way, Plan.   *Land Court,* Exceptions, Findings by judge, Notice.

Upon exceptions, by certain respondents in a petition in the Land Court for the registration of the title to a certain parcel of land on Eastern Point in Gloucester, to rulings that the respondents were not entitled to a right of way over the petitioner's land, it was *held* that there was no necessity for considering what rights of way, if any, owners of land on the Point, other than the excepting respondents, might have, except so far as the existence of such rights might be pertinent to the exceptions.

Plans of land on Eastern Point in Gloucester had delineated thereon ways, called, respectively, "Eastern Point Boulevard (West)" and "Eastern Point Boulevard (East)," Eastern Point Boulevard (West) beginning at a park lodge at the northwesterly corner of the Point, and in general followed the line of the shore of Gloucester Harbor to the southern part of the Point, where Eastern Point Boulevard (East) began and ran along the shore of the ocean past a fresh water lake, when it turned and converged with Eastern Point Boulevard (West) somewhat southerly of the gate lodge. The two ways were continuous and there was no well defined point of demarcation at the south. Deeds of parcels of land bounding on the respective ways treated them as two independent ways. At the trial of a petition for the registration of the title to a parcel of land on the ocean side of the Point, certain respondents who owned land on the harbor side bounding on Eastern Point Boulevard (West) claimed that Eastern Point Boulevard (East) traversed the petitioner's land and that they had rights of way thereon. At the request of the respondents, the judge who heard the petition ruled that, for the purposes of the rule that a grantee of land bounded in a deed on a private way belonging to the grantor and in existence as shown on a plan referred to in the deed acquires a right to use the way in both directions so far as the grantee owns provided it is reasonably necessary to the advantageous use

of the granted premises that he should have such right, it is immaterial that the name of the way changes at a certain point in its course. Subject to an exception by the respondents, the judge refused a request for a ruling, "For the purpose of determining the extent of rights of way impliedly granted to the purchasers of lands on Eastern Point, Eastern Point Boulevard (East) and Eastern Point Boulevard (West) are to be treated as a single road" and ordered a decree for the petitioner, excluding any right of way for the respondents. *Held*, that

(1) The order for registration imported a finding of all subsidiary facts essential to support it;

(2) The refusal of the ruling requested was warranted.

Where a large tract of land is plotted into numerous lots bounded on many different ways, and deeds of the several lots contain no express grant of rights in the ways shown on the plan, a grant by implication of an onerous servitude in the nature of rights in the ways will not be presumed where such rights are not necessary for the enjoyment of the land conveyed, unless such grant clearly is shown to be intended by the parties to the deed.

A reference in a deed to a plan showing ways as above described, although accompanied by its use for description of bounds, will not convey to the grantee rights in the ways not necessary for the enjoyment of the premises where no intent to make such a grant appears in the deed.

The necessity, in contemplation in ordinary cases, for the use of ways such as those above described, is that of access to public ways.

The great desirability of a way for purposes of prospect does not make the use of a way, such as is above described, necessary to the granted premises.

No grant by implication of a right of way over Eastern Point Boulevard (East), above described, arose from deeds of lots on Eastern Point Boulevard (West) and in the northeastern portion of the Point, Eastern Point Boulevard (East) not being mentioned in the deeds nor shown on plans accompanying them and its use not being necessary for access from the granted premises to a public way.

At the hearing of the petition above described, it appeared that the common grantor of the petitioner and of the respondents filed in the registry of deeds an index map, representing Eastern Point as divided into sections, designated by letters. This map showed Eastern Point Boulevard (East) as crossing the land later acquired by the petitioner. The respondents' deeds were accompanied by plans and contained reference to single sections of the index plan not juxtaposed to the petitioner's land and showing no part of it. *Held*, that

(1) The fact, that the detailed plan of the separate sections related to one large tract and might be fitted together, did not make them one plan in legal effect;

(2) The index plan did not create nor enlarge easements described in the deeds to the respondents, since it was not referred to therein for that purpose.

Where a deed of land contains a provision specifically defining rights of way which are appurtenant to the land conveyed, no easement in other ways on land of the grantor can be created by implication.

At the hearing of the petition above described, it appeared that, prior to the deed to the petitioner, his grantors had executed and delivered to the city of Gloucester an instrument in the form of a deed granting to the city "the right to lay, relay, and maintain water pipes and place hydrants for the purpose of conveying and using water in or under certain private ways owned by us and situated in the said lands at Eastern Point in said Gloucester, viz: all ways now existing

and in use through said lands, and also in or under any and all ways which may hereafter be laid out or constructed by said Company or its Trustees through said lands." At that time a way was in existence and in use over the land afterwards conveyed to the petitioner, although no water pipes had been laid there. The judge of the Land Court ruled, subject to an exception by the city, that the city had no easement or other rights in the road in question over the petitioner's land. *Held*, that the ruling was wrong and that the exception must be sustained.

In making the decision, above stated, as to the rights of the city of Gloucester in the land of the petitioner, it further was *stated*, that the effect of the easement given to the city as to ways which might thereafter "be laid out or constructed" by the grantors and their successors was not determined.

A refusal by a judge of the Land Court to grant a request for a finding of fact is not subject to an exception.

A respondent in a petition in the Land Court, if he has a full opportunity to be heard, is not harmed by a refusal by the judge to give further notice to other persons who do not appear in the proceedings.

PETITION, filed in the Land Court on March 20, 1919, for the registration of the title to land on Eastern Point in Gloucester.

The respondents were the city of Gloucester and the Attorney General, who claimed certain public rights described in the decision of the judge of the Land Court; George O. Stacy; Herbert E. and Arthur W. Smith; and Joseph O. Procter, William H. Jordan and Joseph O. Procter, Jr., Trustees, all of whom claimed "a right of way across the parcels described in the petition, on the location of the present Eastern Point Boulevard (East)."

A sketch plan, compiled from several of the exhibits in evidence at the hearing in the Land Court and from statements in the bill of exceptions, is shown on the next page. The petitioner's land is marked, thereon, "Petitioner"; land of the respondent Stacy is marked "ST."; land of the respondents Smith is marked "SM."; land of the respondents Procter, Jordan and Procter, Jr., Trustees, is marked 'PRO."; Eastern Point Boulevard (East), as designated on some of the plans referred to in the opinion, is marked "EEEEE," (a portion of it being shown on one plan as crossing the petitioner's land at "AA";) and Eastern Point Boulevard (West) is marked "WWWWW." As stated in that part of the decision of the judge of the Land Court quoted on page 42, neither course of Eastern Point Boulevard (East) across the petitioner's land, shown on the sketch plan, is described or shown on the petitioner's deed from the Trustees of the Eastern Point Company.

In the Land Court, the petition was heard by *Davis*, J.  His decision and order for a decree, which were annexed to the bill of exceptions, were in part as follows:

"This is a petition for registration of title to a tract of land at Eastern Point, Gloucester, containing a little over twenty acres of upland, together with the rocks at the southeasterly end of Brace's Cove, known as Brace's Rocks.  The respondents all

claim rights of way in a road running close to the shore through said land.  This constitutes the principal matter in controversy.

"Some of the respondents claim public rights of way over the road in question acquired by adverse use, and some private rights of way acquired by express or implied grant.  The claim to public rights of way has been made on behalf of the public at the instance of certain citizens of Gloucester and of an improvement association of summer residents at Bass Rocks, a summer colony situated to the north of Eastern Point, by the city solicitor and the Attorney General.  There is a further claim on behalf of the public of a right by prescription over Brace's Rocks.  No evidence was presented showing any rights by prescription in or over Brace's Rocks, and I find that no such rights exist.  Much evidence was presented as to the claim of public rights of way, and, while counsel for the city and the Attorney General did not care to argue the matter the claim was expressly not waived by them.

"In 1887 the southerly portion of Eastern Point, consisting of about four hundred acres of land bounded easterly and southerly by the ocean, westerly by Gloucester Harbor and northerly by the Patch farm, was conveyed by the estate of Thomas Niles to trustees for an association known as the Eastern Point Association. Thomas Niles had purchased the farm in 1844. The northerly boundary line was marked by a stone wall stretching from the ocean to the harbor, and the only entrance to the Niles farm was through a gate near the harbor side. . . .

"When the Eastern Point Associates took over the property they built a gate house at the entrance near the north end of the beach, carrying the road at first through an archway under it, and later beside it. A keeper has been maintained at the lodge by the associates and their successors, and also signs declaring the road a private way and referring visitors to the lodge for permission to enter the premises. The Eastern Point property has been developed as a summer residential property and roads have been built around the point and over it in various directions. A hotel has been situated just within the gate near the beach and many houses have been erected. Until 1910 these roads all led back to the main gate which constituted the only means of ingress and egress to and from the property. In addition to a keeper at the lodge gate an officer was kept at the fork of the roads, a short distance inside the property, who attempted to regulate traffic, to forbid the use of bicycles and automobiles, and to exclude all persons who would not respect the rights of the owners of the estate as a private estate, that being the officer's understanding of the expression 'respectable' people. . . . The whole Point is sightly and picturesque, and a great many people have driven around it. . . . In addition to the maintenance of the lodge gate, signs and the attempted supervision by employees, there has been no period of twenty years within which travel over that portion of the road now in question has not been interrupted by gates, bars, fences, walls, or barriers. . . . I find that no public rights have been acquired by prescription in or over the land now of the petitioner. . . .

"There are three respondents who claim rights of way by implied grant. . . .

"In 1902 a large tract of land near the Eastern Point light house

was conveyed to one Rouse, and was accompanied by a detail plan by Aspinwall and Lincoln showing the property so conveyed with the avenues running through it as called for by the earlier plans. It also showed the Boulevard (East) as extending through the present locus as far as the fresh water pond as indicated on the prior plans. This deed contained an agreement that any road upon, or bordering upon, land thereby conveyed, shown upon said plan, and not now laid out, when laid out shall be so located that its centre lines shall correspond with the centre of the road as shown on said plan. As a matter of fact, however, as above noted, the Eastern Point Boulevard (East), then constructed on the ground to and beyond the present locus, did not correspond with the road shown as Eastern Point Boulevard (East) on said plan, or any of said plans, being nearer the sea. This Rouse deed is the only deed in the entire chain of Eastern Point conveyances which bounds on Eastern Point Boulevard (East) south of Farrington Avenue as shown on the plans running from the junction of the roads across the portion of Boulevard (East) which curves around through the golf links, or of the temporary way which has been actually built and used in place of Farrington Avenue. The owner of the Rouse land later closed that portion of the Boulevard (East) running through his land, together with Suffolk and Grove avenues, thereby diverting travel over the shore road from his immediate shore front to a detour around his land. The owner of the Rouse property has not appeared nor filed any objection in this proceeding.

"There have been a number of deeds given referring to the sectional plans, but to no sectional plan that shows the present locus. Most of the deeds of Eastern Point lands have been made with reference to detail plans . . . showing the immediate property then conveyed with the adjoining roads, the lines of such roads being carried beyond the limits of the land immediately conveyed, indicating their continuance on either side of the granted premises. None of them show the Boulevard (East) as located through the land now of the petitioner except the Rouse plan. No deeds, except the Rouse deed, have been given on any ways which are physically connected within the limits of the present locus with the road existing on the ground there over or on any ways which appear by any of the said plans to be connected within the limits

of the present locus with that portion of the Boulevard (East) shown on the plans as extending through it. . . .

"In 1910 roads were constructed at the northeasterly portion of the Eastern Point property. The road which had been built through locus in 1894 close to the shore was widened and carried on from Fort Hill Avenue at the south through locus and across the strip of beach between the pond and Brace's Cove to a connection with the temporary way which led from the junction of the roads near the lodge gate south of the golf links. It was at about this point that the Eastern Point Boulevard (East) of the plans circled around through the golf links, but as above stated, it has never been built, partly because it is not physically possible. From this point on to the Patch line a road was built known as Atlantic Avenue, taking the place in a general way of Sherman Avenue as shown on the plans, but not corresponding therewith, or leaving any lots on the ocean side. At the Patch line the wall was removed and this road connected with the Bass Rocks Road. . . .

"In February, 1917, the Trustees of the Eastern Point Company conveyed to the petitioner, referring to an Aspinwall and Lincoln detail plan, a tract of land lying southerly from and including Brace's Rocks, which form the southeast point of Brace's Cove, bounded westerly by the fresh water lake and southerly by what is shown on the lithograph plan as Lincoln Avenue. Both deed and plan refer to the Boulevard (East) at the southerly and northerly ends of the tract conveyed. The plan does not show it as extending through the premises, nor do either plan or deed refer to Ohio Avenue, but the deed provides for the construction of Lincoln Avenue from the point where it runs out of the Boulevard (East) at the southerly boundary of the premises, and the construction of a road substantially corresponding to the Lake Avenue of the recorded and lithograph plans around the easterly margin of the lake to the Boulevard (East) at the northerly boundary of the premises. These roads have been built, and the petitioner has attempted to close the portion of the shore road which was built through what is now his land in 1894 and 1910. This diverts travel along the shore of the petitioner's land from the Boulevard (East) at the south, around through Lincoln Avenue and the Lake Shore Road, to the Boulevard (East) at the northerly

end of the property where it runs between the fresh water lake and Brace's Cove.

"The respondents say that access to the ocean and to a road around the shore is an essential element in the entire Eastern Point development scheme, but it is to be noted that no actual access to the ocean is provided for, and that the Boulevard, so far as shown on the recorded or lithograph plans, is not except where it borders on a beach, a road along the shore at all, but on the contrary runs throughout its entire course in behind a tier of shore lots. The Boulevard (West) and (East) as shown on said plans is one continuous way, but not as constructed on the ground by reason of the gap through the golf links and as being located further in from the shore. The index plan was referred to in certain deeds between the trustees themselves, conveying the legal title from one set to another, but not in any deed or plan of land sold to purchasers.

"It is the contention of the petitioner that in the course of the development of the Eastern Point property and the gradual construction of roads over a period of thirty years, the trustees, by the use of sectional or detail plans only, by abstaining from a reference in any of their deeds to any plan which shows roads beyond the limits of the premises then being conveyed, by the guarded use of the lithograph plan as representing a general situation only, varying materially as to the actual location or existence of the streets thereon shown, and by express provision in some of their deeds excluding any rights in any streets other than as called for by such deeds, have avoided the creation, by either express or implied grant, of any rights of way through their remaining property, or over the premises now belonging to the petitioner. He argues that the plans at most show a road running generally around the Point and near the shore, with building lots between it and the water, and that such a road has been provided.

"None of the respondents own any land within a half mile of Brace's Rocks, and the shore road through locus is neither necessary nor convenient as a means of access from any of their land to any highway. The only deed that bounds on the Boulevard (East), except on that portion beyond the gap at the golf links, after the construction of the shore road through locus is the Rouse deed. The only other deed that can be construed as directly re-

ferring to that road is the Taft deed. Rouse, for fairly obvious reasons, makes no objection to this petition. So far as the Taft deed is concerned the evidence tends to show that his land was situated at the extreme end of the inland portion of the Boulevard (East) where its continuance to the eastward is physically broken off at the golf links, leaving him only access from the west, and that the provisions for access through Farrington Avenue or the temporary way to 'the road along the shore land at Brace's Cove known as Eastern Point Boulevard (East)' referred to that portion of the Boulevard (East) which runs along the Cove and connects with the Bass Rocks road, thereby providing access from the east. This portion of the Boulevard (East) remains untouched by the sale to the petitioner.

"The respondents show no title under either the Rouse or Taft deeds. They can only avail themselves of them if, and in so far as, they tend to show a general scheme or plan for a shore road through the property now of the petitioner of such character that the petitioner is estopped from denying its existence, and the acquirement of rights therein in the respondents by implication.

"There is no controversy in regard to the law. The difference arises in regard to its application to the facts. . . . Without attempting to review the many cases on easements implied from grants bounding on a way or from reference to plans, it seems to me that in the case at bar there have been no rights acquired by the respondents in the petitioner's land, and I so rule.

"The respondents contend that sufficient notice has not been given in this case to all parties who may have an interest. The law requires the issuance of a citation immediately upon the coming in of the examiner's report. The examiner having raised the question as to what notice should be given in this matter, it was necessary for the court to give some direction in regard to it. The law also carefully provides for other and further notice at any stage of the proceedings to any person who may then appear to have an interest or a claim to an interest. At the time of the issuance of citation it seemed to me, from such abstract of the entire record title as was then presented, that no parties other than those claiming title under deeds which bound on or refer to Eastern Point Boulevard (East) south of the fresh water lake should be cited. Since then a full report of all conveyances made

out of the Eastern Point property has been submitted, and the only other deed containing any reference to the Boulevard (East) running through locus that has been discovered is the deed to Taft above mentioned. Service of process should be made on the present owner of the Taft lot, and such service has been ordered. The respondents represent in a general way every variety of property on the Point, both geographically and under the different forms of deeds and plans adopted. If as matter of law they have no rights no one else has any rights and it would be idle to make further service. The motion is denied.

"In 1903 the Trustees of the Eastern Point Company executed an instrument by which they authorized, permitted, gave and granted to the city of Gloucester the right to lay and maintain water pipes under certain private ways at Eastern Point, viz., all ways then existing and in use through said lands, and also in or under any and all ways hereafter laid out or constructed by said company through said lands. No water pipes have in fact been laid through the shore road that was constructed through the land now of the petitioner. It is clear that the petitioner's land is subject, however, to the rights of the city under this instrument in the new Lincoln Avenue and Lake Avenue recently built. When the petitioner obstructed the shore road the city removed the obstructions. This was partly under its claim on behalf of certain citizens that there were public rights of way over it, but the city also still claims rights therein under the instrument of 1903. It seems to me that this instrument created a license which, if, and when, acted upon, would ripen into an easement. So far as the shore road through the petitioner's land is concerned, however, which was built in 1894 and widened and extended in 1910 but in which no water pipes were laid, I rule that the respondent city has no easement or other rights therein.

"The respondents have filed written requests for findings and rulings. The findings requested are covered in the foregoing statement of facts. Except as so covered they are refused. The first, second, twelfth, fourteenth and fifteenth requests for findings are specifically refused. Of the requests for rulings I grant the twelfth, thirteenth, fifteenth, seventeenth and nineteenth, and refuse the rest.

"Subject to the rights of the city of Gloucester in Lincoln and

Lake avenues under the instrument of March 12, 1903, and to the restrictions and easements in the petitioner's deed from the trustees of the Eastern Point Company, there must be a decree for the petitioner."

The first, second, twelfth, fourteenth and fifteenth requests of the respondents for findings, refused by the judge, were as follows:

"1. Eastern Point is devoted solely to seaside residential property and access to the ocean and the use of the roads along the shore is reasonably essential to the beneficial use of every estate on the Point.

"2. The nature of this territory is such that it is reasonably essential to the beneficial enjoyment of each lot within it that the owner should have a right to use the shore road."

"12. At the time of the deed to Procter of the land on Atlantic Road the only reasonably adequate road to the Gate Lodge was the shore road, including that part of it which is on the petitioner's land."

"14. For twenty-five years the Eastern Point Company has held out to prospective purchasers that there was a shore road along Brace's Cove and by Brace's Rocks, by recording a large plan showing such road and circulating among real estate dealers a similar plan.

"15. The closing of the entire shore road would be a serious damage to most of the landowners on Eastern Point and would prevent the full beneficial use of their premises."

At the request of the respondents, the judge made the following rulings of law:

"12. A grantee of land bounded on a private way belonging to the grantor and actually existing on the ground or shown on a plan referred to acquires the right to use the way in both directions so far as the grantor owns, provided it is reasonably necessary to the advantageous use of the granted premises that he should have such right.

"13. For the purposes of the rule stated in each of the last two requests it is immaterial that the name of the way may change after a certain point is reached."

"15. A grantee of land bounded on a private way belonging to the grantor and actually existing on the ground and connecting with other private ways belonging to the grantor and also existing

on the ground acquires the right to use the connecting roads so far as is reasonably necessary to the advantageous use of the granted premises."

"17. If the situation of the lands conveyed by the Eastern Point Company to the various grantees was such and the purpose of the conveyances was such that access to the ocean front must have been a material consideration in the minds of the grantees, then all of the grantees whose deeds referred to any of the recorded Foss plans acquired a right of way across Eastern Point Boulevard (East) over the petitioner's land."

"19. Grantees of the Eastern Point Company whose deeds refer to one of the small plans showing the adjacent way extending beyond their lands in either direction and open at both ends were impliedly granted rights of way in both directions and were not limited to the direction leading to the nearest public highway."

The judge refused to make the following rulings of law, asked for by the respondents:

"11. A grantee of land bounded on a private way belonging to the grantor and actually existing on the ground or shown on a plan referred to acquires the right to use the way in both directions so far as the grantor owns."

"14. For the purpose of determining the extent of rights of way impliedly granted to the purchasers of lands on Eastern Point, Eastern Point Boulevard (East) and Eastern Point Boulevard (West) are to be treated as a single road."

"16. If it was reasonably necessary to the full beneficial enjoyment of the lands on Eastern Point Boulevard or ways leading into it that the grantees should have the right to use that part of Eastern Point Boulevard (East) which is on the petitioner's land, there was an implied grant to each grantee of a right of way along the said Eastern Point Boulevard (East)."

"18. If the situation of the lands conveyed by the Eastern Point Company to the various grantees was such and the purpose of the conveyances was such that access to the ocean front must have been a material consideration in the minds of the grantees, then all of the grantees whose deeds referred to small plans of Aspinwall and Lincoln recorded therewith acquired a right of way across Eastern Point Boulevard (East) over the petitioner's land."

"20. It must be taken to have been the intention that such grantees should have a right of way in one direction to the highway leading to Gloucester and in the other direction to and along the road on the ocean front.

"21. The city of Gloucester has an easement entitling it to lay and maintain water pipes in that part of Eastern Point Boulevard (East) which crosses the petitioner's land.

"22. The clause in certain of the deeds of the Eastern Point Company that 'nothing herein contained shall be construed as conveying any rights over the remaining lands of the grantors' does not refer to rights of way over the company's roads."

To the refusals to find and rule as requested by them, and to the ruling that, subject to the rights of the city of Gloucester in Lincoln and Lake avenues under the instrument of March 12, 1903, and to the restrictions and easements in the petitioner's deed from the trustees of the Eastern Point Company, there must be·a decree for the petitioner, the respondents alleged exceptions.

*R. G. Dodge,* (*M. F. Buckley & R. S. Wilkins* with him,) for the respondents.

*H. LeB. Sampson,* for the petitioner.

JENNEY, J. This case is here on the respondents' exceptions in proceedings for registration of the title to land on Eastern Point in Gloucester. The exceptions are to certain findings of fact and rulings made, all relating to easements claimed to exist over the petitioner's land. While the existence of ways public and private by prescription was in controversy, the findings of fact disposed of these contentions and no question relating thereto is now involved.

The petitioner's land in 1887 was included in the Niles farm, a tract of about four hundred acres, bounded easterly and southerly by the ocean, westerly by Gloucester Harbor, and northerly by the Patch farm. Its northerly line was then marked by a stone wall extending from ocean to harbor. Within its bounds, there was a small tract owned by the United States and used as a site for a lighthouse, and a fresh water lake of approximately thirty-six acres separated from the ocean by a barrier beach at Brace's Cove, which formed part of the easterly ocean frontage. The Niles farm did not bound on any public or private way, although a public way then terminated at a point on its northerly boundary at a gate near the harbor side, where a gate lodge was built in 1888.

Questions relating to the Niles farm were before the court in *Niles* v. *Patch*, 13 Gray, 254.

The petitioner's land consists of a little over twenty acres of upland, and bounds on Brace's Cove, the ocean, the fresh water lake, and on a line substantially parallel with the shore of the cove. The easements in controversy are in a private way claimed to exist over this land and close to the shore.

In 1887, the Niles farm was conveyed to the trustees of the Eastern Point Associates, a voluntary association. The trustees caused William H. Foss to make a plan dated March 1, 1888, which showed a division of the entire tract into lots and also "a considerable number of (unnamed) ways." One of the ways designated thereon led from the gate lodge around the entire shore front, past Brace's Cove, past the northerly end of the lake and back to a junction with the same way not far from the gate. The plan also showed a road near the ocean from the northerly end of the lake to the boundary of the Patch farm at about the point where a road to Bass Rocks was subsequently built across that farm. There was no evidence that this plan ever was recorded, referred to in any deed or used in any manner.

Under date of September 1, 1888, Foss made for the trustees a series of plans which consisted of an index plan showing an outline of the entire tract with ways substantially as on the first plan, with a division into sections, but with no division into lots, and separate plans of many sections indicated in outline on the index plan. There was no evidence that sectional plans were made of the part of the tract including the land of the petitioner. The sectional plans contained no reference to the index plan. The index and sectional plans were recorded in the registry of deeds in the same book of plans. The index plan has never been referred to in any deed except in those passing title from trustees to their successors in trust, and then only with an express statement that the reference was made for convenience. Under date of May 1, 1889, a lithographic plan was made which was substantially the same as the Foss plan of March 1, 1888. Roads and ways shown thereon were not in fact built at that time, and never have been built exactly as delineated. While the scheme as to roads has been followed in a general way, sometimes material changes have been made in locations; substitutions have been made in some

cases; and other roads never have been constructed. There was no evidence as to the origin or use of this plan, except that it appeared that it had been inserted in a booklet containing a description of the property. It was produced by the petitioner at the request of the respondents. It did not appear that the plan or booklet ever had been used in the sale of land. In the year 1892, a new lithographic plan substantially like that of 1889 was made. This was distributed to brokers, but it was not recorded, and no reference has been made to it in any deed. The judge found that "It was used as showing in a general way the location of the property, but not as showing any lots which were to be sold in accordance therewith, or as showing the streets and ways as actually constructed, or to be constructed." The evidence stated in the bill of exceptions as to the making of plans, the construction of streets and the way in which the land was divided into lots when actually sold, amply justified this finding.

There were other general plans in evidence, but they do not add to nor detract from the effect of those herein described, and they were not referred to in any deed nor used in the sale of land.

In 1889, the trustees of the Eastern Point Associates mortgaged the property, and in 1892 this mortgage was foreclosed, and the property then subject thereto was conveyed to the trustees of the Eastern Point Company.

The land has been developed as a "seaside residential property" and roads have been opened over it in various places as needed throughout a period of thirty years. The part of the way around the harbor side from the gateway to a point near the lighthouse is and has been called Eastern Point Boulevard (West), while the shore road along the easterly front is designated as Eastern Point Boulevard (East). In 1891 a rough road extending through land of the petitioner was cut through the bushes close to the shore. By 1892 this had become passable, and in 1894 the company built a good road on the same location. This road was materially nearer the shore than Eastern Point Boulevard (East) as shown on the plans. In 1910, it was widened and extended across the beach between the lake and Brace's Cove to a connection with a temporary way, which entered Eastern Point Boulevard (West) near the gate lodge. A road, known as Atlantic Road, which connected through the Patch farm with the Bass Rocks

Road, also was built. This did not closely follow any way shown on the plan. Eastern Point Boulevard (East) has never been constructed from Brace's Cove northerly and westerly of its westerly terminus except for a small section near Brace's Cove, for the reason that its construction is "impracticable because it would take a twenty foot drop" at one point.

Since 1887 when the Eastern Point Associates acquired title, there have been between seventy and eighty conveyances by said associates or their successors in title on the Eastern Point Boulevard (East) and the Eastern Point Boulevard (West) or on ways connected directly or indirectly therewith. The bill of exceptions states that "Many of these deeds referred to small plans recorded therewith which showed the lot of land conveyed, the abutters, the bounding streets, and the adjacent boulevard or street appearing as open in each direction and disclosing a small part of it beyond the property in question at both ends."

The only landowners who are here presenting exceptions to the rulings of the Land Court, and whose rights are in question, are Joseph O. Procter and others, trustees, referred to hereafter as Procter; George O. Stacy; Herbert E. Smith and Arthur W. Smith, referred to hereafter as Smith; and the city of Gloucester. Hence there is no necessity of considering what rights of way, if any, other landowners have, except so far as their existence may be pertinent to the exceptions of these respondents.

The contentions made rest in part on the claim that Eastern Point Boulevard is a single way, rather than two distinct easements. The fourteenth request for ruling was, "For the purpose of determining the extent of rights of way impliedly granted to purchasers of land on Eastern Point, Eastern Point Boulevard (East) and Eastern Point Boulevard (West) are to be treated as a single road." The refusal to make this ruling was justified by the evidence which warrants the consideration of rights in the boulevard on the basis that it consisted of two independent ways. It was so distinguished in nearly all deeds and is so shown on all plans. When not so distinguished in the deeds, the plans therein referred to designate the boulevard as east or west in the manner hereinbefore stated. The fact that the point of demarcation was not well defined does not require a contrary conclusion. This result is consistent with the thirteenth ruling made at the request

of the respondents, that a change in the name of a way after a certain point is reached is immaterial, and with the finding that they are continuous. The order for registration imports a finding of all the subsidiary facts essential to support it and consistent with the express findings. *Adams* v. *Dick*, 226 Mass. 46.

1. The Procter lots. These lots are three in number; one, situated on Atlantic Road and first conveyed in 1910, is in the extreme northeasterly corner of the entire tract and adjoins the Patch farm. Atlantic Road was not shown on any of the original plans of the entire tract, but is a way constructed in 1910 in substitution for a way shown on the plans, although not on the location of that way. The plan referred to in and recorded with the deed of this lot is one of the "small plans" hitherto described and does not show any way over the petitioner's land. The other Procter lots are on Eastern Point Boulevard (West) and were originally conveyed by deeds given in 1888 and 1890. These deeds described the lots as being on a plan of section J of land of the Eastern Point Associates, but that section did not include any part of the petitioner's land nor show any ways thereover.

The principle governing the rights of grantees of lots, bounded on a way shown on a plan was established by *Regan* v. *Boston Gas Light Co.* 137 Mass. 37, and *Pearson* v. *Allen*, 151 Mass. 79, which declared that, in the absence of an express grant, where large tracts of land were plotted into numerous lots bounded on many different ways, a "grant by implication of an onerous servitude upon other land of the grantor, not necessary for the enjoyment of the land conveyed, is not to be presumed unless such is clearly the intention of the parties;" that a reference to a plan in a deed, although accompanied by its use for description or bounds, does not result in the conveyance of rights not necessary for the enjoyment of the premises, in the absence of an intent appearing to that effect; that the only necessity contemplated in ordinary cases is that of access to public highways; and that the great desirability of a way for purposes of prospect, is not a sufficient reason to extend or modify the general rule.

In determining the intent, the entire situation at the time the deeds were given must be considered. For example, whether the ways in question merely existed on paper, or were then constructed on the ground; whether they were then actually used

as appurtenant to the granted premises; or whether they were re- mote or in close proximity. The doctrine of *Regan* v. *Boston Gas Light Co. supra,* and *Pearson* v. *Allen, supra,* is not limited nor impaired by *Boland* v. *St. John's Schools,* 163 Mass. 229, *New England Structural Co.* v. *Everett Distilling Co.* 189 Mass. 145, *Downey* v. *H. P. Hood & Sons,* 203 Mass. 4, and *Ralph* v. *Clifford,* 224 Mass. 58. See also *Drew* v. *Wiswall,* 183 Mass. 554, and *Stevens* v. *Young,* 233 Mass. 304.

Where land is bounded on an existing way not defined by plan referred to in the deed, the same considerations govern. An im- plied grant of way is limited to that necessary for the enjoyment of the premises; and the clear intent of the parties governs. It frequently has been said that there arises by estoppel, which is the basis of the doctrine of implied grant, a right to use a way for its entire length. *Downey* v. *H. P. Hood & Sons, supra,* and cases cited. It is not now necessary to consider whether there may not be some limitation to this broad proposition, for example, where the way is of considerable length, and does not at its distant end connect directly or indirectly with a public way.

Applying these rules to the ways claimed as appurtenant to the Procter lots, it is clear from the findings of the judge that no way over the petitioner's land was necessary for access to any public way. No such way is shown on the plans referred to in the deed of these lots, and the lots do not abut on any way shown on any plan as crossing said land, or on any way actually existing there- over. Hence it is clear that there is no right of way over the locus as appurtenant to the Procter lands.

The ways shown on the plans, and as constructed, did not pro- vide for actual access to the ocean; and except where they bordered on beaches, the boulevards were behind tiers of shore lots. Where they were behind beaches, except on Eastern Point Boulevard (West), there was a strip of land between the way and high water mark. It is argued that the index plan, with which is recorded the detailed plans of some of the sections shown thereon, ties the plans together, so that although in fact distinct, they must be considered as one. The language used in the deeds does not state nor imply that they are to be so treated. The fact that they relate to distinct parts of one large tract, and may be fitted together, does not render them one in legal effect. Moreover, there is no

sectional plan showing the petitioner's land. An index plan of the nature and use described does not create nor enlarge easements, when not referred to for that purpose in the deeds under which title is claimed.

2. The Stacy lots, five in number. These, situated in sections I and J on the index plan, are between the fresh water lake and Gloucester Harbor, and all are on Eastern Point Boulevard (West). They also abut upon other streets in which no rights of way are in controversy under the exceptions. The plans referred to in the deeds and recorded therewith are "small plans" as hereinbefore described, and they do not show the land of the petitioner, nor indicate the existence of any way over the same. The deed contained the following provision: "All said parcels of land are conveyed together with the right to use the streets on which said lots are bounded in common with others entitled to use the same so far as said streets are now open or may hereafter be opened." The rights of way appurtenant to these lots being defined by the deed, no implied easement can arise. Since it has been determined that Eastern Point Boulevard (East) and Eastern Point Boulevard (West) are in legal effect distinct ways, no easement was created over the petitioner's land, as the Stacy lots did not bound on any way in controversy extending thereover.

3. The Smith lot, an interior parcel situated on Farrington, St. Louis and Kenwood avenues, was originally conveyed to Laura Smith. The deed to her, dated April 8, 1910, referred to a "small plan" showing no ways over the petitioner's land. There was no express grant of a right of way. The land did not bound on any existing way near or over the petitioner's land; and under the findings of the judge, no way thereover was necessary for access to the granted premises. Clearly there was no implied grant of a right over the petitioner's land as appurtenant to this lot.

No question of the existence of ways by dedication is involved. Dedication implies public rights only. Since St. 1846, c. 203, § 1 (now R. L. c. 48, § 98), no public way can be so created. *Hayden* v. *Stone,* 112 Mass. 346. *Commonwealth* v. *Coupe,* 128 Mass. 63. *McKenna* v. *Boston,* 131 Mass. 143. *Attorney General* v. *Onset Bay Grove Association,* 221 Mass. 342, 347, 348, 350. See *Hinckley* v. *Hastings,* 2 Pick. 163, 164, note, and cases collected in 18 C. J.

38. Therefore the respondents get nothing by reference to deeds of other lots. Even if it be assumed that the deeds of the Taft and Rouse parcels gave the grantees rights of way over the locus which those grantees, who are still the owners, do not appear to maintain, the respondents are not aided.

The cases as to dedication of land for public landings, shore fronts, beaches, parks, squares and for light, air and prospect do not apply, as no such question is involved. See *Attorney General* v. *Tarr*, 148 Mass. 309; *Attorney General* v. *Vineyard Grove Co.* 181 Mass. 507; and *Attorney General* v. *Onset Bay Grove Association*, *supra*.

4. The city of Gloucester. On March 12, 1903, the trustees of the Eastern Point Company in consideration of $1 and other valuable considerations executed and delivered to the city of Gloucester an instrument in the form of deed, duly acknowledged and recorded, in which they "authorize, permit, give and grant to the said City of Gloucester the right to lay, relay and maintain water pipes and place hydrants for the purpose of conveying and using water in or under certain private ways owned by us and situated in the said lands at Eastern Point in said Gloucester, viz: all ways now existing and in use through said lands, and also in or under any and all ways which may hereafter be laid out or constructed by said Company or its Trustees through said lands." No water pipes have been laid by the city under the terms of this deed. When it was given, a way was in existence and in use over land now owned by the petitioner, as already stated. Since the petitioner has taken title, he has built a new way under the requirements of his deed on the location of Lincoln Avenue and in continuation thereof; and he also has constructed a way along his westerly boundary near the fresh water lake and substantially in the location of Lake Avenue as shown on the general plans.

The judge ruled without any exception by either the petitioner or the respondents that the petitioner's land is subject to the rights of the city of Gloucester, under the instrument hereinbefore referred to, in Lincoln and Lake avenues, and no question as to the correctness of this ruling is before the court. He further ruled that the city had no easement or other rights in the road which had been built through the petitioner's land and near the shore, because he interpreted the instrument as creating a license "which

if, and when, acted upon would ripen into an easement." We think that this ruling was wrong, and that the exception thereto must be sustained. See *Gray* v. *Cambridge*, 189 Mass. 405.

This instrument gave to the city for the purposes defined therein an easement in the ways then in existence and in use. Its effect as to ways which might thereafter "be laid out or constructed" by the grantors or their successors in trust is not now considered.

The petitioner's claim, that the grant to the city is invalid for the reason that it refers to ways to be laid out and constructed by the trustees, can now be disposed of. He contends that it recognizes the existence of ways over land in which the dominant estate is in the same owner. However, it is well settled that for the purposes of description, exception or grant, either express or implied, a way as actually worked and used may be referred to in the creation of rights in land. See *Gorton Pew Fisheries Co.* v. *Tolman*, 210 Mass. 402, at pages 408, 409, 411.

The refusal to make the specific findings of facts requested was not the subject of exception. *Puffer Manuf. Co.* v. *Yeager*, 230 Mass. 557.

The respondents, having had full opportunity to be heard, are not aggrieved by the refusal of the judge to give further notice to others, who did not appear in the Land Court. Their rights were not affected thereby.

The exceptions not specifically described, all of which relate to requests for rulings, have been examined with care. They are disposed of by the considerations herein stated, or by the findings of the judge, and need not be considered separately. We find no error in their refusal. All of the exceptions aside from that relating to the rights of the city of Gloucester are overruled, and its exception relating solely to the right to lay, relay and maintain water pipes and place hydrants is sustained.

*So ordered.*