CORA M. BACON *vs.* ONSET BAY GROVE ASSOCIATION
& another.

Plymouth.    December 6, 1921. — May 22, 1922.

Present: RUGG, C.J., DE COURCY, CARROLL, & JENNEY, JJ.

*Easement. Deed,* Reference to plan. *Equity Jurisdiction,* To enjoin infringement of easement. *Onset Bay Grove Association.*

In a suit in equity by the owner of a lot of land in that part of Wareham known as Onset, to enjoin the Onset Bay Grove Association, the source of the plaintiff's title, and the owner of a majority of the shares of its capital stock from infringing upon an alleged equitable easement appurtenant to land of the plaintiff requiring that Pavilion Park be forever maintained and kept open as indicated on a plan referred to in the deed from the defendant association, it appeared that the entire description in the original deed from the defendant association, dated and acknowledged in 1877 and recorded in 1885, was as follows: "Lot numbered two hundred and twenty-six (226) on a plan of lands Onset Bay Grove Association, recorded in the Registry of Deeds for Plymouth County, Plan Book No. 1, Folio 58 as the same is set out on said plan." The plaintiff's lot was on the corner of Park Street and Union Avenue and had an area of three thousand eight hundred and seventy-eight square feet. On the plan were shown as opposite the lot five wooded spaces denominated parks which filled all the space between it and the water front and on one of them, Pavilion Park, containing about one and one half acres, was shown a speaker's stand with seats fronting it. The entire plan showed a tract including about one hundred and fifty acres, more than forty-five acres of which were shown as shore lands, groves and parks, forty-three acres of which had been dedicated to public uses. The rest of the area was divided into seven hundred and ninety-one small house lots. The plan indicated that certain areas designated as open wooded spaces, groves and parks were distributed over the entire tract so that each of the numerous small lots was in close proximity to one or more of such open spaces. The entire situation disclosed a systematic plan of development of a summer and vacation resort necessary in the attendant circumstances in order that the lots sold might be used and enjoyed for such purposes and warranted a finding that the right claimed by the plaintiff was reasonably necessary as appurtenant to his land as it was intended and designed to be used, and a reasonable inference was that the designations on the plan were made as an inducement to buy lands situated like that of the plaintiff. The defendants had removed large and sightly trees which for many years had covered Pavilion Park and which with proper care would have continued to furnish shade and ornament, and purposed placing upon the park buildings to be used for business and recreational purposes which would use practically all its available space. *Held,* that

(1) The plaintiff was entitled to an enforcement of the equitable easement claimed;

(2) The plaintiff was entitled to injunctive relief restraining acts of the defendant in violation of the equitable easement.

The Onset Bay Grove Association was incorporated "for the purpose of holding personal property and real estate, where a wharf, hotel and other public buildings may be erected, and building lots sold or leased for the erection of private residences or cottages, under such rules and regulations as the association may prescribe." Its real purpose was to establish a place where those who were believers in the doctrine of spiritualism could congregate, and where camp meetings, especially for those who were believers in that doctrine, could be held. In 1897 and for some time thereafter it maintained a fence around Pavilion Park, above described, and closed gates therein during spiritualistic meetings. A master who heard the suit found that "except for the temporary interruptions caused by the closing of the gates in the fence when meetings were being held, the plaintiff, other lot owners, and the public generally, were free to go and come over Pavilion Park and the adjacent open lands of the Association without objection or interruption and that they freely availed themselves of this privilege." *Held*, that such conduct of the defendant association could not be construed as showing an intent proper to be considered in the construction of the deed.

The existence, at the time the plan was made and the deed was given, as described above, and ever since, of an open air auditorium and a building containing a platform for speakers, and the fact that this building has been enlarged and the offices of the association had been maintained in it and other uses made independent of those described but incidental to its maintenance, did not affect the equitable easement claimed by the plaintiff.

An easement may exist to have land kept as an open space except as covered by a structure authorized by the instrument creating the right.

In the suit above described, it appeared that there was no material interference with the plaintiff's rights until the individual defendant in the middle of February, 1921, cut trees on Pavilion Park and prepared to build new structures and to move old ones, that the plaintiff first heard of this in the same month, that he, acting promptly, interviewed the individual defendant and indicated his objections, and that the suit was begun on March 26, 1921. *Held*, that a finding that the plaintiff was not barred by laches was justified.

Property rights of the plaintiff being involved in the suit above described, he was not relegated to damages but was entitled to injunctive relief.

There not having been shown in the suit above described any such change in the surroundings of the plaintiff's land as to make it inequitable to grant the relief sought, such relief should be given irrespective of the possibility of changed conditions in this respect within the next few years.

Bill in equity, filed in the Supreme Judicial Court on March 28, 1921, and afterwards amended, against Onset Bay Grove Association and William Warr, seeking the establishment of an alleged right of the plaintiff to an equitable or other easement in and upon a parcel of land in that part of Wareham called Onset, known as Pavilion Park, as appurtenant to an adjoining parcel owned by her, requiring that Pavilion Park forever be

maintained and kept open as indicated on the plan hereinafter described, thus affording the owners thereof an attractive view of Onset Bay and direct and convenient access to the shores thereof,

that the defendants be enjoined from cutting down any trees, making any excavations, carrying on any building operations or making any preparations therefor in or upon Pavilion Park, or in any other wise interfering with the plaintiff's right to have it maintained in accordance with her easement, that the defendants be ordered to restore the parcel known as Pavilion Park, in so far as it was possible to do so, to the condition in which it was previous to

alleged infringements of the plaintiff's easement by the defendants, and for damages.

The suit was referred to a master. Material facts found by the master are described in the opinion. There is reproduced on page 419 the material features of a portion of the plan recorded in Plymouth Registry of Deeds, Plan Book 1, Folio 58, referred to in the deed which was the source of the plaintiff's title and which is described in the opinion.

An exception by the plaintiff to the master's report was waived and, by order of *Braley,* J., the report was confirmed. The single justice also ruled that, although the plaintiff had not established any rights of way across Pavilion Park, appurtenant to her estate by prescription, yet she was entitled to injunctive relief restraining the defendants from erecting and maintaining the buildings described in the bill on that park, and requiring them to restore the premises in so far as possible to their former condition; and he reported the case for determination by the full court.

*W. G. Rowe,* for the defendants.

*H. Williams, Jr., (H. V. Tillson* with him,) for the plaintiff.

JENNEY, J. The Onset Bay Grove Association, one of the defendants, was incorporated under St. 1877, c. 98, "for the purpose of holding personal property and real estate, where a wharf, hotel and other public buildings may be erected, and building lots sold or leased for the erection of private residences or cottages, under such rules and regulations as the association may prescribe." Its real purpose as admitted by the answer of both defendants was "to establish a place where those who were believers in the doctrine of spiritualism could congregate, and where camp meetings especially for those who were believers in that doctrine, could be held."

The plaintiff owns a lot of land with buildings thereon situated in that part of the town of Wareham known as Onset. The lot is part of a largely wooded tract of about one hundred and fifty acres situated on Onset Harbor at or near the head of Buzzards Bay, and owned in 1877 by the Onset Bay Grove Association. The natural advantages of the location were widely advertised, the place acquired almost immediate popularity and had a rapid growth, both of which elements of prosperity have since continued. A village of considerable extent now exists, having many inhabit-

ants throughout the year, although it still depends for the most part upon summer residents for its existence.

The association soon after it acquired the land caused a plan to be made showing the division of the land into approximately seven hundred and ninety-one small house lots, a camp ground, many ways, parks, groves, squares, and reserved spaces. The original of this plan was recorded in the proper registry of deeds. Conveyances of property very generally, if not altogether, since 1878 have been made by reference to the plan.

The association conveyed to Jane M. Nickerson the lot which the plaintiff now owns by deed dated May 24, 1877, acknowledged on May 25, 1877, and recorded on November 17, 1885. *Hall* v. *Sears*, 210 Mass. 185. The entire description contained in the deed is "Lot numbered two hundred and twenty-six (226) on a plan of lands Onset Bay Grove Association, recorded in the Registry of Deeds for Plymouth County, Plan Book No. 1, Folio 58 as the same is set out on said plan." The plan hereinbefore referred to is that described in the deed. The plaintiff by mesne conveyance has become the owner of the lot and has whatever property rights which vested in the original grantee. Her lot is on the corner of Park Street and Union Avenue, both shown on said plan, and has an area of three thousand eight hundred and seventy-eight square feet. Since 1890 it has had upon it two summer cottages now occupied by the plaintiff and her tenants in the spring and summer months.

The plan shows on Union Avenue directly across from the plaintiff's land wooded spaces entitled "Pavilion Park," "Union Square," and "Waban Square," and beyond these and continuing down to the water front "Prospect Park," and near by "Bay View Grove." On Pavilion Park, which contains about one and one half acres, the plan shows what the evidence discloses to be a speaker's stand with seats fronting it. The water front is about five hundred feet from the plaintiff's property and the intervening land as shown on the plan wholly consists of these parks, squares, paths, and one avenue. This part of the plan is reproduced on page 419.

The main question is as to the plaintiff's rights, if any, in Pavilion Park, and in Union Square, which has been treated and known as a part of Pavilion Park, the plaintiff contending that she has an equitable easement therein.

No question of dedication or other public right is involved. See *Attorney General* v. *Onset Bay Grove Association,* 221 Mass. 342, where Camp Ground, Union Square and Pavilion Park were not included in the direction of a decree enjoining interference with the public use of an easement there held to exist as to parks, squares, water front, and beaches shown on the plans of the defendant association.

The effect of the reference in a deed to a plan has been considered in many cases. In *Light* v. *Goddard,* 11 Allen, 5, 8, it was said: "We do not think that a mere reference to a plan in the descriptive part of a deed carries with it by necessary implication an agreement or stipulation that the condition of land, not adjacent to, but lying in the vicinity of, that granted, as shown on the plan, or the use to which it is represented on the plan to be appropriated, shall forever continue the same so far as it may be indirectly beneficial to the land included in the deed, and was within the power or control of the grantor at the time of the grant. Certainly no case has been cited which supports so broad a doctrine. But, in the present case, it seems to us to be clear on the face of the deed that the grantors did not intend to convey any such right or privilege as that now asserted by the plaintiff." In *Boston Water Power Co.* v. *Boston,* 127 Mass. 374, 376, where a plan was referred to in a deed, the court said: "It must be considered as making a part of the contract in each case, so far as is necessary to aid in the identification of the lots, and the description of the rights intended to be conveyed. All the particulars appearing on the plan and applicable to these lots are to be regarded as if they had been fully set forth in the deeds." This language was quoted with approval in *Lagorio* v. *Lewenberg,* 226 Mass. 464. See *Kaatz* v. *Curtis,* 215 Mass. 311. Where land was "bounded and described, according to a plan" the reference was said to have been made for the purpose of boundary and description and that "there is no presumption that a reference to one enlarges or adds to the easements otherwise conveyed." *Williams* v. *Boston Water Power Co.* 134 Mass. 406, 416. See also *Attorney General* v. *Whitney,* 137 Mass. 450, 455. In *Downey* v. *H. P. Hood & Sons,* 203 Mass. 4, 10, reference to a plan was said to be "not only for the purpose of ascertaining the lot conveyed, but including the description of the appurtenant rights which were intended to attach. These

particulars were incorporated by reference in each deed, as if they had been recited at length."

However, where land is conveyed by reference to a plan in the absence of an express grant no onerous servitude is created over other land of the grantor shown on the plan where such right is not necessary for the enjoyment of the premises unless shown to be intended by the parties to the deed. In determining the intent, the entire situation at the time of the conveyance must be considered. *Prentiss* v. *Gloucester,* 236 Mass. 36. *Peck* v. *Conway,* 119 Mass. 546. The necessity need not be an absolute physical one. *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass. 402, 410. Each case is to be decided by a determination of the intent as evidenced by the deed and the circumstances in which it was made. *Lipsky* v. *Heller,* 199 Mass. 310, 316, 317. *Prentiss* v. *Gloucester, supra,* at page 52.

Where the intent is doubtful, the construction of the parties shown by the subsequent use of the land may be resorted to, if such use tends to explain or characterize the deed, or to show its practical construction by the parties, providing the acts relied upon are not so remote in time or so disconnected with the deed "as to forbid the inference that they had relation to it as parts of the same transaction or were made in explanation or characterization of it." *Hurd* v. *General Electric Co.* 215 Mass. 358, 361. *Blais* v. *Clare,* 207 Mass. 67. *Jennison* v. *Walker,* 11 Gray, 423. *Reynolds* v. *Boston Rubber Co.* 160 Mass. 240, 245.

In determining the question of intent, conditions existing at the time when the deed was made must be considered. The great increase in real estate development in modern times, the divisions of large tracts into small lots, and the promotion of sales by schemes which affect the use of the land by a neighborhood or community rather than by individuals as such, the necessity, which formerly was not so urgent, for open spaces and parks, the needs of a community designed largely for rest and recreation in vacations, and the fact that the general scheme of development was into lots of small size, all may be considered.

We think that the conclusion of the single justice that the plaintiff was entitled to rights in Pavilion Park and Union Square was well warranted and should stand.

The tract included about one hundred and fifty acres; more

than forty-five acres were undivided and shown on the plan as shore lands, groves, and parks of which approximately forty-three acres have been dedicated to public uses. *Attorney General* v. *Onset Bay Grove Association, supra.* The plan clearly indicates that the lands designated as open wooded spaces, groves, and parks are distributed over the entire tract so that each of the numerous small lots, into which nearly all the remainder of the tract was divided, is in close proximity to one or more of them. The park and square in question were used for the benefit of the land now of the plaintiff and that of other owners. The entire situation discloses a systematic plan of development of a summer and vacation resort in the attendant circumstances necessary in order that the lots sold might be used and enjoyed for such purposes, and warrants, if it does not require, a finding that the right claimed by the plaintiff was reasonably necessary as appurtenant to her land as it was intended and designed to be used. It is reasonable to infer that the designations were made as an inducement to buy lands situated like that of the plaintiff.

This conclusion is not at variance with *Light* v. *Goddard, supra,* *Coolidge* v. *Dexter,* 129 Mass. 167, *Boston Water Power Co.* v. *Boston, supra, Williams* v. *Boston Water Power Co., supra,* and *Attorney General* v. *Whitney, supra,* which are clearly distinguishable in their facts. It is far within the authority of *Lennig* v. *Ocean City Association,* 14 Stew. 606, and *Pierce* v. *Roberts,* 57 Conn. 31, but these cases are not cited as the basis of this decision.

The use of the defendant's land here concerned does not lead to nor warrant any different result. So far as it was near in time, it confirmed the conclusion already stated. So far as it was remote, for example in maintaining a fence and the closing of gates therein during spiritualistic meetings in 1897 and for some time thereafter, it cannot be construed as showing an intent proper to be considered in the construction of the deed. The master found that "except for the temporary interruptions caused by the closing of the gates in the fence when meetings were being held, the plaintiff, other lot owners, and the public generally, were free to go and come over Pavilion Park and the adjacent open lands of the Association without objection or interruption and that they freely availed themselves of this privilege."

The existence, at the time the plan was made and the deed

given, and ever since, of an open air auditorium and a building containing a platform for speakers, and the fact that this building has been enlarged and the officers of the association have been maintained in it and other uses made independent of those described, but incidental to its maintenance, do not require a different result. The plaintiff does not contend that such uses should be enjoined. Her right in the park and square is subject to a reasonable use for such purpose provided it is in substantial conformity to the plan. An easement may exist to have land kept as an open space except as covered by a structure authorized by the instrument creating the right. *Wilson* v. *Massachusetts Institute of Technology,* 188 Mass. 565. *Massachusetts Institute of Technology* v. *Boston Society of Natural History,* 218 Mass. 189. *Johnson* v. *Shelter Island Grove & Camp Meeting Association,* 122 N. Y. 330.

The single justice who reported the case did not rule that the plaintiff is entitled to rights of way in the paths shown over Pavilion Park or separating it from Union Square. The plaintiff does not contend that she is entitled specifically to such easement except as it may be incidental to her right here determined. As the plaintiff was content with the ruling, its correctness need not be considered. It may, however, be noted that no defined paths were ever actually laid out or constructed as indicated on the plan. The path dividing Pavilion Park and Union Square never has existed and these two parcels have always been used as one. The travel was in the lines naturally used by cottage owners and the public generally.

The defendant William Warr and one Kenney in May, 1920, purchased ninety-one shares of the capital stock of the defendant association out of one hundred shares then outstanding. At the time of this purchase, the auditorium was the only building standing on either park or square. Warr, acting with the authority of the association, purposes to build a theatre on Pavilion Park, fronting on Onset Avenue and close to Union Avenue with a row of stores extending from Union Avenue to within a short distance of Prospect Park, to move the building called the "Temple" now situated on the lot marked "Camp Ground" to the southeast corner of Pavilion Park and to raise that building, constructing therein bowling alleys, to use said building for dances and other

entertainments, and to move the auditorium building to the north corner of the park directly across the road from the plaintiff's building. Work has been started on some of these changes. Warr purposes to use practically all the available space on Pavilion Park. He has removed the large and sightly trees which for many years had covered Pavilion Park and which with proper care would have continued to furnish shade and ornament.

The finding of the master does not show a loss of the easement by abandonment. The facts found as to laches are not sufficient to defeat the suit. There was no material interference with the plaintiff's rights until Warr, about the middle of February, 1921, cut the trees and prepared to build new structures and to move old ones. The plaintiff first heard that the defendants had started to do this in the same month and her attorney promptly interviewed Warr and Kenney and indicated her objections to what was being done. This suit was commenced on March 26, 1921.

On the facts found by the master, we are of opinion that the plaintiff is not barred by laches. *Adams* v. *Dick,* 226 Mass. 46.

As the plaintiff's property right is involved she is not relegated to damages, but is entitled to injunctive relief. *Riverbank Improvement Co.* v. *Chadwick,* 228 Mass. 242. *Szathmary* v. *Boston & Albany Railroad,* 214 Mass. 42. *Congregation Beth Israel* v. *Heller,* 231 Mass. 527.

The case is not within the authority of *Jackson* v. *Stevenson,* 156 Mass. 496. The master found that at the present time the district in the immediate vicinity of the plaintiff's house is residential rather than business. The facts stated amply support this conclusion. *Goulding* v. *Phinney,* 234 Mass. 411. The possibility of changed conditions in this respect within the next few years does not defeat the plaintiff's rights. *Evans* v. *Foss,* 194 Mass. 513.

The exceptions having been waived, the master's report was properly confirmed. The plaintiff is entitled to a decree in accordance with the ruling of the single justice and with costs.

*Ordered accordingly.*