Earl DENNING and Laura Denning, his wife; William Lee and Jean Lee, his wife; Joseph Sousley and Marge Sousley, his wife; Francis Polski and Martha Polski, his wife; Vernon D. Robertson and Mildred Robertson, his wife; and Charles Stevenson and Pudge Stevenson, his wife, Respondents,

v.

Chester MANLEY and Ruth A. Manley, his wife, Appellants.

No. WD 31444.

Missouri Court of Appeals, Western District.

Nov. 3, 1980.

Carl A. Hummel, Stephanie G. Hazelton, Kansas City, for appellants.

David A. Yarger, Versailles, for respondents.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

This action resulted from a dispute among property owners at the Lake of the Ozarks as to ownership and usage of an area designated on a subdivision plat as "easement" and of a roadway. From an adverse judgment on a petition filed by plaintiff lot owners for injunction, defendants appeal. Appellant-defendants will be referred to as the Manleys and respondent-plaintiffs as the lot owners.

All of the lands now owned or claimed by the parties were platted in 1949 by the then owners, Michael William Juricak and his wife. The subdivision provided for fourteen numbered lots generally being on the lake front, a large interior tract designated Tract A, fronting on a county road, two irregular shaped parcels designated as easement tracts and various private roads. The easement tract which is the principal source of contention appears on the plat as a triangular parcel at or near the lake front and separated from Tract A by an intersection of the roadways and an island divider. At issue is the use which has been made by the Manleys of this easement tract and a part of a roadway.

The source and extent of the lot owners' interest in the numbered lots was not shown by any evidence. The lot owners' petition alleged, without more, that plaintiffs were lot owners in the subdivision and the Manleys' answer admitted that allegation. It therefore cannot be determined from this record which lots are owned by the lot owners or whether all fourteen lots are represented.

The Manleys' title was obtained from the Juricaks by warranty deed dated March 29, 1979. That deed conveyed all of Tract A and also purported to convey a fee interest in the triangular tract now the subject of dispute. The deed and the lot owners' petition, as well as the judgment entered in this case, have all described the triangular tract by metes and bounds using identical terms. While the plat, which was introduced in evidence as plaintiffs' exhibit 1, does not bear any legend describing the distance or direction as to two sides of the triangular parcel, there is no contention that the land described in the Manleys' deed, the petition and the judgment is other than the triangular tract labeled "easement" on the plat, bordered on the south by Lot 7 and on the east and northeast by the roadway. We assume it to be such and also assume the only lands in controversy to be that tract, according to the metes and bounds description, and the adjacent roadway.

Portion of Plaintiffs' Exhibit 1

The subdivision plat filed of record by the Juricaks October 10, 1949 shows an irregular line generally outside the lines of the lots and roadways. This line is designated as the 660-foot contour and, from plaintiffs' exhibit 2 of which further comment will be made subsequently, it appears that this irregular line indicates the shore line of the Lake of the Ozarks when the lake level achieves this elevation. The triangular tract bears the designation "easement" on the plat which includes the following dedicatory language: "All road's (sic) and ease-ments are hereby dedicated to the lot own-er's (sic), for the purpose of ingress and egress."

Soon after acquiring their deed, the Man-leys commenced construction work which provoked the remonstrance of their neigh-bors and, ultimately, this suit. At its near-est point, the platted west line of Tract A is separated from the lake by intersecting roadways, a divider island and the triangu-lar parcel, a total distance of approximately 100 feet. On the apparent assumption that they owned the triangular parcel, the Man-

leys caused a concrete seawall to be built some five feet in height and topped it with a three and one-half foot chain link fence. On the shore side of the wall, fill dirt was added generally raising the level of ground on the easement tract and on land nearby to approximately an even grade. In addition, the Manleys added a retaining wall of railroad ties separating the graveled portion of the roadway from the easement tract.

Plaintiffs' exhibit 2, received in evidence by stipulation, is a survey plat made November 13, 1979 and depicts the location of the concrete seawall and the railroad tie wall as well as the easement tract and roadways. The accuracy of this survey and the actual location of the walls are not the subject of any dispute. From this exhibit, it is apparent that the railroad tie wall is located almost entirely on land within the dedicated roadway as it appears on the plat. A small section of the tie wall extends onto the triangular easement tract. It is also apparent from the exhibit that no part of the concrete seawall is on the triangular easement tract, but is located between the lakeside boundary of the easement and the lake. At its southerly end, the wall is 1.89 feet from the easement boundary and at the northerly end, this distance is 11.7 feet.

In addition to the above facts derived from the pleadings and exhibits, the evidence in the case consisted of photographs of the locality and a stipulation dictated into the record by counsel for the lot owners and agreed by the attorney for the Manleys. The stipulation covered facts and exhibits described above and the following: " * * * that said construction permanently deprives the plaintiffs from the uses granted by said dedication * * *."

On the pleadings, the exhibits and the oral stipulation, the trial court entered judgment for the lot owners. The judgment granted relief as to the claimed encroachments by the Manleys upon both the easement tract and the roadway, directed removal of all obstructions constructed by the Manleys on such lands and permanently enjoined the future erection of improvements which would interfere with the lot owners' use of the roadways and their access to the lake. Significantly, the judgment repeated the metes and bounds description of the triangular easement tract and limited the injunctive order to improvements previously constructed or later contemplated on that parcel and the dedicated roadways.

In this appeal, the Manleys complain that the judgment is erroneous because (a) by implication, they are to remove the concrete seawall which does not lie on the easement tract and (b) there was no finding by the court that the railroad tie wall interfered with any usage of the easement. The Manleys also contend error in the refusal to grant them a continuance for which application was made because of an absent witness. The points will be treated in inverse order.

The trial setting of the case was accomplished on motion of the lot owners well in advance and the Manleys make no complaint of inadequate notice. They do contend, however, that their motion for continuance filed the morning of trial was meritorious because a witness critical to their defense was absent by reason of unanticipated severe weather. The error of the trial court, they argue, was in denying the continuance on the ground that the witness's testimony would be inadmissible to contradict the language of the plat dedicating the easement and roadways for general use. Thus, the first issue posed on appeal is not the diligence of the Manleys in procuring attendance of the absent witness, but whether his testimony, even if produced, could have affected the outcome of the case.

The witness in question was Michael William Juricak who, with his wife, had caused the subdivision plat to be prepared and filed. The substance of the testimony which Juricak was expected to give was related to the court by Manleys' attorney when the continuance application was argued. Although no stipulation by the lot owners qualified the recitation as evidence, the trial court accepted the statement as an offer of proof. We do likewise for the

purpose of determining the potential impact of the testimony on the issues in the case and to appraise the contention that the trial court erred in denying the Manleys the benefit of that evidence by overruling the continuance request.

Shorn of detail, the testimony which Juricak would have offered asserted three alternative possibilities as to the Manleys' rights vis-à-vis the triangular easement parcel and the roads. First, Juricak would have testified that his intention when the plat was prepared was to reserve the triangular tract for the use of the owners of Tract A to provide ingress and egress to the lake because Tract A had no shoreline frontage. This intent is confirmed by Juricak's deed to Manley purporting to convey title to the triangular parcel in conjunction with the transfer of Tract A. Second, Juricak would have testified that the dedication language on the plat referring to "Lot Owner's" was intended to include the owners of Tract A who would share with the other owners of lots in the subdivision any rights common to all. Finally, Juricak would have attested to a condition of many years standing as to the easement tract which was unattended and unused without claim by anyone until the Manleys' construction commenced.

It was and is the Manleys' contention that Juricak's testimony was material and relevant to resolve ambiguities in the plat regarding who were the beneficiaries of the plat dedications and for what purposes and to show that any rights the lot owners may have had in the easement and road appropriated by the Manleys' construction were lost by nonuser.

The initial difficulty in construction of the parties' rights based on Juricak's testimony as tendered is that no clear delineation of that evidence has been offered. In the Manleys' application for continuance, they allege that Juricak's intent when designating the triangular tract on the plat as "easement" was to reserve that easement to himself as owner of Tract A. In the statement to the court by Manleys' attorney, this contention was repeated but counsel also stated that the dedication by the plat of easements and roads to the lot owners en-

titles the Manleys to use of the triangular easement tract because the word "lot" includes not only the numbered lots, but also Tract A. Quite apparently, a reservation of the easement to the use and benefit of the Tract A owner is entirely different from a claim that the Tract A owner enjoys the right of user in common with the lot owners. Because of this question as to what evidence Juricak would actually have given, we are obligated to consider both alternatives.

 Assuming first that Juricak would express his intent to have been a reservation of the easement right in question for his exclusive use as the owner of Tract A, any such attempt would fail to create any easement at all and would render the designation of "easement" inscribed on the plat as meaningless. Juricak could not establish an easement on his own land available only to him. In order to create an easement, there must be a dominant and a servient estate and they must not be lodged in the same person. A man cannot have an easement over his own land. *Ball v. Gross*, 565 S.W.2d 685, 688 (Mo.App.1978) and cases there cited. Thus, the designation of "easement" appearing on the triangular tract would have been without legal effect unless user rights to persons other than Juricak and those claiming under him by conveyance of Tract A were created. A contention that the owners of Tract A alone have the right to use the triangular easement ground is simply a claim that the disputed land is part of Tract A. That position is untenable in view of the plain designation appearing on the plat.

 Alternatively, it does not profit the Manleys in this action to demonstrate that the plat language of "Lot Owner's" includes the owners of Tract A. Whatever may be the merits of that claim, the stipulated fact has been and the whole origin of the dispute is that the Manleys' use has been exclusionary and has deprived the lot owners of the use they are entitled to make of the easement and roadway. Cessation and removal of obstruction was the relief granted. Even if the Manleys are "lot owners," they are not entitled to block the use and access of others and a judgment to this effect is

proper even if the Manleys share the easement privileges.

◼ Finally, Juricak's evidence of abandonment could not have persuaded a different result even if, as contended, the lot owners made no use of the easement and road for thirty years. An easement created by a grant is not lost by nonuser. *United Realty Company v. Outlaw,* 472 S.W.2d 378, 382 (Mo.1971).

◼ The entire thrust of Juricak's proffered testimony was to advance the interests of the Manleys at the expense of the lot owners by asserting that the plat was ambiguous and then offering an interpretation favorable to the Manleys. This disposition by Juricak is compatible with his situation as one of the grantors from whom the Manleys purported to acquire the unencumbered fee interest in the triangular easement tract. Even if it be argued that ambiguity exists in the plat as to why the easement was created, what user rights were contemplated and who is to enjoy the benefits, doubts in these respects are to be resolved against Juricak, and consequently against the Manleys who claim through him, because Juricak or his agents prepared the plat. *Bladdick v. Ozark Ore Co.,* 381 S.W.2d 760, 765 (Mo.1964).

In summary, the trial court concluded that Juricak's evidence as described in the offer of proof would not be competent or admissible because the plat language was unambiguous and could not be altered or modified by testimony of the author of the plat. The court was correct in so ruling and was, accordingly, also correct in denying the continuance to provide time for the witness to attend.

◼ As to the railroad tie wall, the Manleys concede that this construction lies in part on the easement and in part on the dedicated roadway, but they contend that no evidence shows the tie wall to impede the lot owners' ingress and egress. They therefore argue that it was error for the court to order its removal.

From the exhibits in evidence, it appears that the tie wall does not encroach on any part of the road as actually used and defined by a gravel surface. By the very nature of a dedicated road, however, any construction on the surface is necessarily an obstruction which cannot be tolerated. In addition, the Manleys have stipulated that the permanent improvements they have erected do deprive the lot owners of the uses granted by the plat dedication. In retrospect, the Manleys now find the stipulation unpalatable and seek to avoid its consequences by arguing that the obstructions contemplated when they entered into the stipulation were those temporarily raised during and because of construction. Examination of the transcript yields no factual basis to support this argument. On the basis of the stipulation and the conceded location of most of the tie wall in the dedicated roadway, the trial court was obligated to direct its removal.

◼ As to the seawall, a construction of substantial dimension and, presumably, of significant expense, a different problem is raised. The Manleys' brief treats the issue only obliquely and the record offers no opportunity for intercession by disposition on this appeal. Unfortunately, the seeds of future controversy must apparently be allowed to bear their own fruit in due course.

By the uncontroverted evidence, the seawall is not on the easement tract or any other portion of the lands which were the subject of the plat. The evidence does not disclose the ownership of the ground underlying the seawall nor is it explained how those entitled to use the easement for access to the lake derive a right to cross land beyond the lakeside boundary of the easement tract. In conformity with the proof supplied, the trial court's judgment directs only that the Manleys be enjoined from erecting or maintaining any permanent improvements within the boundaries of the triangular easement tract or upon the dedicated roadway. Similarly, removal ordered of existing improvements is limited to those now standing within the same boundaries.

It may well be, as the Manleys suggest, that removal of the seawall was a prime objective in this suit or is contemplated by the lot owners as a part of the relief provided. Certainly this judgment has little practical value to the lot owners if they are

entitled to require removal of the fill dirt on the easement tract but must still confront the five-foot concrete wall and fence between the easement tract and the lake. The fact remains, however, that the judgment goes no farther and, indeed, could not because of the limitations of the evidence offered.

In sum, the judgment as entered requires the Manleys to remove from the boundaries of the triangular easement tract as expressly set out in the judgment all obstructions constructed by them thereon, to similarly remove obstructions from the easement roadway and restore it to its prior condition and to refrain in the future from erecting any permanent improvements on such lands. The issue of the Manleys' right to traverse the easement and roadways for ingress and egress was neither raised nor ruled and is therefore beyond the scope of the judgment here reviewed. Similarly, the disposition of the seawall, while perhaps implicit in the plaintiff lot owners' original cause, is not addressed in the judgment, and we express no opinion thereon.

The judgment is affirmed.

All concur.