Edmund J. ANDERTON and Pauline Anderton, Plaintiffs-Appellants,

v.

Charles L. GAGE, et al., Defendants-Respondents.

No. 14532.

Missouri Court of Appeals, Southern District, Division Two.

March 23, 1987.

Mary A. Greer, Laurie, for plaintiffs-appellants.

Gary W. Drover, Camdenton, for defendants-respondents.

PER CURIAM.

By their first amended petition, the plaintiffs alleged they were the owners of certain described real property in Duggan's Park Subdivision in Camden County. The description in the petition was in terms of lots and blocks and Tracts 1, 2 and 3 and the park area of that subdivision. The description further stated, "according to the plat thereof."

The petition also alleged the defendants, owners of lots in the subdivision, claimed some interest in land designated on the plat of the subdivision as "Easement" which lies north of Tracts 1 and 2. The petition prayed that title "in and to the above described real estate" be quieted in the plaintiffs.

The judgment of the trial court declared the plaintiffs to be the owners of the property described in terms of lots, blocks, tracts and the park area. It further declared that the real property so described did not include the "Easement" tracts. It concluded that the owners of lots within the subdivision share an easement over each area designated "Easement" on the

plat, "[s]aid easement rights being for those reasonable uses and purposes which the areas so designated as 'easement' will accommodate according to the ways and uses to which said areas may be naturally and reasonably devoted to include, without limitation, access to and ingress and egress to and from the waters of the Lake of the Ozarks." The plaintiffs appeal.

The following is an outline of the basic facts presented by the sketchy evidence. The plat of Duggan's Park Subdivision was recorded December 14, 1951. Duggan's Park Subdivision is on the south side of Rize Branch Arm of the Lake of the Ozarks. A portion of the platted area has been platted as Blocks 1, 2 and 3, each of which has been subdivided into lots. The three blocks contain a total of 35 lots. Blocks 1, 2 and 3 are not contiguous with the lake.

Portions of the platted area are designated Tracts 1, 2 and 3. These tracts are not divided into blocks or lots. The area of each of those tracts is approximately the same size as each of Blocks 1, 2 and 3. Tract 1 lies east of Blocks 1, 2 and 3. Tract 2 lies generally northeast of those blocks. Tract 3 adjoins those blocks on the southwest. An area designated "Park" adjoins the blocks on the northwest. Tract 2 is encircled with a road. There is a relatively long, narrow area lying between the north side of the road along the northwest side of Tract 2 and the lake. There is a similar area lying between the north side of Tract 1 and the lake. Each of these areas is designated "Easement." There is also an area contiguous with the lake that lies between Tract 1 and Tract 2 and north of Block 1 that is also designated "Easement." The plat contained the following legend. "The roads as shown are 30 feet wide and are hereby dedicated to the use of the owners of lots in this subdivision, as such and for the instillation [sic] of utilities."

Without stating which lots, the petition alleged 14 individuals owned lots in the subdivision. There was no evidence concerning the chain of title or the sale of specific lots and tracts. No abstract of

title was offered in evidence. There was testimony that certain lots had been purchased in 1958 and 1959. There was evidence from which it could be reasonably inferred the subdivision and surrounding area developed extensively after 1950.

To establish their title, the plaintiffs testified they bought their property from John C. Pohlmann and his sisters. To establish this title the plaintiffs placed in evidence Exhibit 3, a deed, dated August 20, 1976. The grantors were Helen K. McCandless, John J. Gallagher and Loretta J. (Abbey) Gallagher, his wife. The grantees were the plaintiffs. The described property was the same as that described in the petition in terms of lots, blocks, tracts and the park area. Following the description the deed stated: "Subject to all easements and restrictions of record."

John Pohlmann testified. He identified Exhibit 1 as "a deed from the property that was conveyed to my sister by John B. Anderton and his wife." Exhibit 1 was not offered in evidence and is not before this court. Pohlmann testified that he provided the money to purchase the property and was in fact the owner. He further testified that with the exception of one or two lots that had been sold, the property he sold to the plaintiffs was the same property that he had purchased. He said that he owned the property from about 1960 to 1976.

There was evidence that from December 14, 1951, the date of the plat, to the date of trial, the areas designated "Easement" had been used continuously by lot owners in Duggan's Park Subdivision and other persons owning property in another nearby subdivision. That use included the following: The installation and maintenance of boat docks, launching, docking and storing boats, fishing, swimming, camping and picnicking, and ingress and egress to the docks and lake. A concrete slab was constructed in the area to facilitate access to the docks and lake. When asked who constructed the slab, Pohlmann said, "Well, everybody that lived down there took a hand in it."

In their brief the plaintiffs assume the trial court determined the lot owners ac-

quired the easements in question by prescription. The defendants contend the judgment could have been based upon such acquisition by dedication, estoppel or by prescription.

There are numerous methods or circumstances by which easements may be created. 2 Thompson on Real Property, Chapter 13, Creation of Easements (1980 repl. ed.). In general, all of these methods or circumstances are applicable to the creation of easements in an area that has been platted. However, most frequently, easements are created by a plat or by reference to a plat by dedication or by grant, express or implied. Easements in platted areas are also often acquired by prescription. Cunningham, Stoebuck and Whitman, The Law of Property, Hornbook Series (Lawyers ed. 1984).

The term dedication is properly applied to the creation of easements in favor of the general public. A dedication may be a statutory dedication or a common law dedication. A statutory dedication is accomplished by the execution of an appropriate conveyance or words of conveyance on a plat and the acceptance of the dedication by an appropriate public body. A common law dedication may be accomplished when the plat does not comply with the statutory requirements or is not accepted by a public body, but the intent of the owner to vest rights of use in the general public appears, and there is an acceptance by public use. *Weakley v. State Highway Commission*, 364 S.W.2d 608 (Mo.1963); *City of Alexandria v. Kara Baptist Academy, Inc.*, 680 S.W.2d 416 (Mo.App.1984). For these reasons, there cannot be a dedication, in the strict sense of the word, in favor of an individual or a limited number of individuals. *Village of Climax Springs v. Camp*, 681 S.W.2d 529 (Mo.App.1984); *Marks v. Bettendorf's, Inc.*, 337 S.W.2d 585 (Mo.App.1960); *Moore v. Queener*, 62 Tenn.App. 490, 464 S.W.2d 296 (1970).

Nevertheless, a fundamental principle applicable to a dedication is applicable to the grant of an easement by means of a plat to an individual or a limited number of individuals. *State ex rel. State Highway Commission v. Public Water Supply Dist. No. 2 of Jefferson Co.*, 559 S.W.2d 538 (Mo.App.1977). That principle is that the intent of the owner to create an easement must appear from the plat. The modified term "private dedication" has been applied to such creation of private easements by grant by implication. *Rose v. Fisher*, 130 W.Va. 53, 42 S.E.2d 249 (1947). Factual situations may result in the dedication of a use to the public and the creation by grant of a private easement in the same property. *Moore v. Queener*, supra; *Huning v. Potts*, 90 N.M. 407, 564 P.2d 612 (1977). For these reasons, decisions using the terminology of dedication may be applicable to the creation of easements or rights of use, such as those in question, in individuals or a limited number of individuals. The coexistence and differentiation between a dedication of an easement to the public and the grant of an easement in favor of a group of individuals, such as lot owners, is discussed in Annot., Conveyance With Reference to Plat, 7 A.L.R.2d 608 (1949).

The determination of whether or not private easements are established by reference to a plat of a subdivision involves two questions. However, those questions are often intermingled. The first question is, does the plat establish a tract or an area to be subject to an easement for a given purpose? Or stated another way, does the intent of the owner to create an easement appear from the plat? Second, does reference to the plat establish a grant of that easement to the public or to an individual or a class of individuals?

Both questions may be answered by an express declaration on a plat. For example, in *Denning v. Manley*, 610 S.W.2d 51 (Mo.App.1980), a tract between a road in a subdivision and the Lake of the Ozarks was designated "Easement." A legend on the plat provided: "All road's [sic] and easements are hereby dedicated to the lot owner's [sic] for the purpose of ingress and egress." Id. at 54. The legend was held to be the basis of a grant to the lot owners an easement in the tract for ingress and egress to the lake. In this case, the legend dedicates the roads to the lot owners but

makes no mention of the tracts designated "Easement."

However, it is not essential that a plat expressly designate the purpose of an unmarked or an ambiguously marked area in a subdivision. "In construing plats of this character, we must give effect to the plain meaning and intent they exhibit by their outlines as well as by their words." *City of Caruthersville v. Huffman*, 262 Mo. 367, 171 S.W. 323, 325 (1914). Or, stated another way, "It follows that in construing the plat we should give effect to the intention of the company as manifested by its acts as shown by the plat. In other words, we are not limited to the words written and markings made on the plat. We must give effect to the meaning and intent exhibited by the outlines of the plats." *City of St. Louis v. Koch*, 335 Mo. 991, 74 S.W.2d 622, 623 (1934). Also see *Schell v. City of Jefferson*, 357 Mo. 1020, 212 S.W.2d 430 (banc 1948).

In construing a plat of an area similar to the one in question, it has been appropriately declared:

'In determining the question of intent, conditions existing at the time when the deed was made must be considered. The great increase in real estate development in modern times, the divisions of large tracts into small lots, and the promotion of sales by schemes which affect the use of the land by a neighborhood or community rather than by individuals as such, the necessity, which formerly was not so urgent, for open spaces and parks, the needs of a community designed largely for rest and recreation in vacations, and the fact that the general scheme of development was into lots of small size, all may be considered.' *Bacon v. Onset Bay Grove Association*, 241 Mass. 417, 423, 136 N.E. 813, 816 [1922]. Applying the foregoing principles to the facts found by the master, the conclusion was warranted that the rights claimed by the plaintiffs were reasonably necessary as appurtenant to their land as it was intended and designed to be used. The case at bar is not distinguishable in its essential aspects from *Bacon v. Onset*

*Bay Grove Association*, 241 Mass. 417, 136 N.E. 813.

*Carroll v. Hinchley*, 316 Mass. 724, 56 N.E.2d 608, 612 (1944). It is further established:

And in case of doubt as to any ambiguity as to the meaning of the dedicator, as expressed upon the face of the plat making the dedication, as to what is intended to be donated to the public, parol evidence may be resorted to, to show how each of the parties to the dedication have treated the dedication and what they have done under the provisions thereof. *City of California v. Burke*, 292 Mo. 466, 239 S.W. 830, 832 (1922).

These rules have been applied in construing plats in many cases. For example, in *Bacon v. Onset Bay Grove Ass'n*, 241 Mass. 417, 136 N.E. 813 (1922), the court held the plaintiff was entitled to the common use of open spaces labeled "Pavilion Park", "Union Square" and similar designations. In so holding the court said,

The entire situation discloses a systematic plan of development of a summer and vacation resort under the attendant circumstances necessary in order that the lots sold might be used and enjoyed for said purposes, and warrants, if it does not require, a finding that the right claimed by the plaintiff was reasonably necessary as appurtenant to her land as it was intended and designed to be used. It is reasonable to infer that the designations were made as an inducement to buy lands situated like that of the plaintiff. Id. 136 N.E. at 816.

In a case involving facts similar to those in this case, the court held that an undesignated ten foot strip was subject to an easement in favor of the owners of lots in a subdivision for access to the lake. *Klein v. Dove*, 205 Md. 285, 107 A.2d 82 (1954). In so holding the court said,

Regardless of the absence of any such legend as 'community beach' on the lake area, there is no readily perceptible reason for the ten-foot right of way between what appears to be the main road of the development and the lake area except to give the owners or occupants of interior

lots on this waterfornt [sic] development access to boating, bathing, swimming and fishing.

Id. 107 A.2d at 85. Similar facts were also involved in *Cassell v. Reeves*, 265 S.W.2d 801 (Ky.1954). In that case the court held that an unmarked strip also provided access for lot owners to a navigable river. In so holding the court noted that "[s]uch special condition is leaving an unmarked space or strip between a street shown on the plat and a navigable river." Id. at 803.

Pertinent to this aspect of the case is *Kelly v. Schmelz*, 439 S.W.2d 211 (Mo.App. 1969). In that case it was held:

> Missouri follows the rule as set out in 28 C.J.S. Easements § 87, pages 766–767: '... where a way is granted or reserved without limitation as to its use, it will not necessarily be confined to the purpose for which the land was used at the time the way was created, but may be used for any purpose to which the land accommodated by the way may naturally and reasonably be devoted.... The grantee is entitled to vary his mode of enjoying the same, and from time to time avail himself of modern inventions if by so doing he can more fully exercise and enjoy or carry out the object for which the way was granted.'

Id. at 213.

■ It is not essential the second question be answered by an express grant of an easement.

> It is now well settled that 'when property sold is described in a conveyance by reference to a plat upon which streets are shown, there is an implied grant of an easement therein which is deemed a part of the property to which the grantee is entitled.' *Larkin v. Kieselmann*, Mo. Sup., 259 S.W.2d 785, loc. cit. 788. The same rule is announced in the early case of *Carlin v. Paul*, 11 Mo. 32. And this doctrine is generally recognized. 28 C.J.S., Easements, § 39, p. 701; 17 Am. Jur., Easements, Section 47, page 958; Jones on Easements, Section 231, page 192, Section 234, page 194. But the general public acquires no right in such streets. *Smith v. City of Hollister*, [241], Mo.App. [379], 238 S.W.2d 457, loc. cit. 463.

*Winslow v. Sauerwein*, 285 S.W.2d 21, 24 (Mo.App.1955). Also see *Weakley v. State Highway Commission*, supra. This principle is also applicable to establish easements for the use of common areas, such as beaches, parks and golf courses. *Hendley v. Overstreet*, 253 Ga. 136, 318 S.E.2d 54 (1984); *Haertlein v. Rubin*, 195 S.W.2d 480 (Mo.1946); *Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co.*, 77 N.M. 730, 427 P.2d 249 (1967); *Wilkinson v. Nassau Shores*, 1 Misc.2d 917, 86 N.Y.S.2d 603 (1949); *Putnam v. Dickinson*, 142 N.W.2d 111 (N.D.1966). The decisions vary concerning whether or not an easement created by such a conveyance will extend to all lot owners the right to use all streets in the subdivision. The three views are discussed in Annot., Conveyance With Reference to Plat, 7 A.L.R.2d 608, supra. However, it is generally held that such an implied easement extends to all lot owners in the subdivision an easement to use common areas such as beaches, parks and golf courses. Annot., Conveyance With Reference to Plat, 7 A.L.R.2d 608, supra. In this connection, an express declaration on a plat that roads and streets are for the use of lot owners is demonstrative of an intent that an implied easement for the use of common areas in the subdivision should also be so limited. *Klein v. Dove*, supra.

■ Also, as stated, an easement in a platted area may be created or acquired by prescription. The principles applicable to the creation and acquisition of easements by prescription are well established. *Guerin v. Yocum*, 506 S.W.2d 46 (Mo.App. 1974). Those principles are frequently applied in respect to easements for ingress and egress. They are less often applied in determining the existence of an easement for the use of a common area by a limited group. Nonetheless, the principles are applicable and are applied in such a determination. 3 Powell, The Law of Real Property, § 414[9] (1986). In this case there was evidence from which the trial court could reasonably conclude that for more than 30 years, under a claim of right, owners of

lots in the subdivision had continuously used the easement tracts for the purposes mentioned in evidence. See *Osburn v. Supreme Express & Transfer Co.*, 590 S.W.2d 360 (Mo.App.1979).

In this court tried case no findings of fact were made or requested. All fact issues must be considered as having been found in accordance with the result reached. Rule 73.01.1(b). Neither party requested a statement of the grounds for the decision of the trial court. No such statement was made in the formal judgment. However, in its docket entry setting forth its judgment, the trial court cited three cases. *Three-O-Three Inv., Inc. v. Moffitt*, 622 S.W.2d 736 (Mo.App.1981); *Denning v. Manley*, supra; *Kelly v. Schmelz*, supra. Those citations make it clear the trial court found the easement declared was created by grant by implication.

■ In this case, the trial court could find that the plat, considered in the light of the circumstances and use made of the easement tracts, construed in accordance with the authorities cited, demonstrated the intent of the owner to grant the easements in question. There was no direct evidence that any lots in the subdivision had been conveyed by the developer by an instrument describing the property conveyed by lot number. However, there was evidence that several individuals purchased individual lots. The plaintiffs alleged that 14 defendants owned lots in the subdivision. It is a permissible inference that the lots were conveyed by reference to the plat.

Moreover, prior to their purchase from Pohlmann, the plaintiffs had actual knowledge of the use made of the tracts designated "Easement." They had both actual and constructive knowledge of the plat. *Schell v. City of Jefferson*, supra. As in *Hetzler v. Millard*, 348 Mo. 198, 153 S.W.2d 355 (1941), they were familiar with the physical situation of the subdivision and the easement tracts. They accepted a deed referring to the plat which is reasonably construed to create easements for the purposes mentioned. "When the defendants received the deed to their lots as described in the plat, they approved and adopted it; ...." *City of Caruthersville v. Hoffman*, supra, 171 S.W. at 325. Under such circumstances, it is generally held the grantees are estopped from asserting an interest in derogation of such an easement. 28 Am.Jur.2d Estoppel and Waiver § 13 (1966); 31 C.J.S. Estoppel § 38 (1964); *Osburn v. Supreme Express & Transfer Co.*, supra. As in *Hetzler*, to permit the plaintiffs to defeat the easement would work an injustice to the lot owners. Cf. *Moseley v. Searcy*, 363 S.W.2d 561 (Mo. 1962); *City of Laddonia v. Day*, 265 Mo. 383, 178 S.W. 741 (1915).

■ Against this background, the plaintiffs' first point of error is that the trial court erred in failing to quiet title to the easement tracts. They argue the judgment must be reversed because a judgment "in an action to quiet title must affirmatively adjudge the issue of title in compliance with the statutory scheme provided by Missouri law." The essence of their complaint is that the trial court erred in failing to declare who owned the subservient estate in the easement tracts. Their point is based upon their contention "much of the shoreline of Tracts I and II is denoted as 'easement.'" The trial court was not compelled to and did not accept this contention.

The boundaries of Tract I and Tract II are clearly delineated on the plat. The tracts designated "Easement" are contiguous to but not included in Tract I or Tract II. The deed under which the plaintiffs claim title does not purport to include any property not described in terms of lots and blocks, Tracts I, II or III or park area. The inclusion of the term "Park" in the description in the deed is a concession that Tracts I, II and III do not include any common area contiguous thereto. Indeed, the plaintiffs' petition alleges the easement area lies north of Tracts I and II. The trial court could further conclude that the plaintiffs' belief that they owned the easement tracts did not constitute substantial evidence of title to those tracts. The trial court's determination the easement tracts are not included in the deed under which they claim is supported by the evidence.

The duty of the trial court to determine title to the subservient estate in the easement tracts was conditioned upon the presentation of substantial evidence of ownership of that estate. *Baugh v. Grigsby*, 58 A.L.R.2d 607, 286 S.W.2d 798 (Mo.1956); *Richards v. Northwestern Coal & Mining Co.*, 221 Mo. 149, 119 S.W. 953 (1909). Such title could have yet been vested in those who platted the subdivision or in undisclosed grantees from them. The trial court obviously determined there was no substantial evidence of ownership of such subservient estate. In the absence of such evidence, the trial court did not err in failing to determine title to that estate. *Ellis v. Chestnut*, 289 S.W.2d 740 (Ky.1956); *Baugh v. Grigsby*, supra; *Bixby v. Backues*, 346 Mo. 955, 144 S.W.2d 112 (1940).

■ The plaintiffs' second and final point is that the judgment of the trial court is against the weight of the evidence and erroneously applies the law. Only by consideration of their argument it is learned that the plaintiffs base this point upon two contentions. The first contention is that the testimony of Pohlmann that he gave the lot owners the right to use the easement tracts conclusively established that such use was permissive. This contention is not directed toward a decisive issue.

Further, the trial court was not compelled to accept that testimony. In fact, when asked if anyone asked his permission to use the easement areas, Pohlmann replied, "No, it was generally understood that everyone could use it down there." Further, in speaking of the easement areas, he stated "Well, when I bought it, everybody was using it so I didn't change it any." His testimony established that such use continued from 1960 through 1976. There was additional testimony the lot owners used the easement tracts under a claim of right. This contention of the plaintiffs has no merit.

The plaintiffs next argue the judgment was erroneous because "the majority of the testimony offered by Defendants came from non-lot owners and, therefore, should not have been considered by the Court." The non-lot owners who were witnesses had personal knowledge of the facts to which they testified. Even though those witnesses were non-lot owners, their testimony was nevertheless competent evidence. The plaintiffs' second contention is rejected. There is substantial evidence to sustain the judgment; it is not against the evidence and it does not erroneously declare or apply the law. The judgment is affirmed. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

All concur.