Robert T. COPANAS, Plaintiff–Appellant,

v.

Robert LOEHR, et al., Defendants–Respondents.

No. 63068.

Missouri Court of Appeals,
Eastern District
Division Three.

March 29, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 1994.

Application to Transfer Denied
June 21, 1994.

Phillip K. Gebhardt, Crestwood, for plaintiff-appellant.

Robert Edward Jones, Clayton, for R. & K. Loehr.

Steven May, Maryland Heights, for J. & J. Emmett.

Gregg and Carolyn Mathery, pro se.

Kenneth Weaver, pro se.

Edward Delworth, St. Louis, for G. Sondlo.

Ralph and Martha Harmon, pro se.

Donald and Catherine Gardner, pro se.

PUDLOWSKI, Judge.

The litigation leading to this appeal involves appellant's action concerning an easement and certain property located in a St. Louis County subdivision. The trial court dismissed Count III of appellant's three count petition and subsequently entered judgment denying appellant's relief requested in the first two counts. Appellant raises nine points on appeal. We affirm in part, reverse in part and remand.

In 1923, Robert S. Williams and Roberta F. Williams (Williams) filed a plat in the St. Louis County Recorder's Office, subdividing the tract now known as Meramec Forest Subdivision. The plat shows seventy-one numbered lots and three lots marked by letter. The plat imposes, with exceptions for four lots, restrictions concerning the building of homes such as not permitting more than one house to be built on any one lot. The plat creates easements which provide the only ingress and egress to Ridge Road, the sole road appearing on the plat. With one exception the word "walk" appears on these easements.

The easement which is at the center of controversy in appellant's first eight points is twenty feet wide and runs generally west to east (see exhibit, as modified, attached herein). This easement (primary easement) is located on a steep grade with the easternmost point lying at the bottom of this grade. Respondents, Karen Loehr and Robert Loehr (Loehrs), own lot 51 and portions of lots C and 50. Lots 50 and 51 are adjacent to and south of the primary easement. Respondent, Greg Sondlo, owns lots 52, 53, 54, 62, 63, 64 and a portion of lot C. Lots 52, 53 and 54 are adjacent to and south of the primary easement. Appellant purchased his property in 1984 and currently owns lots 55, 56, 57, and B which are all adjacent to and south of the primary easement. The plat shows that the primary easement provides the only ingress and egress for several of the adjacent lots. Appellant's lots are located at the bottom of the grade and the Loehrs' and Sondlo's property is located uphill from appellant's property. Appellant's home is located on lot 55. A pathway exists across lot 54, which Sondlo owns, to appellant's home.

In 1947, certain lot owners created a twelve foot easement to be used as a driveway for automobiles and vehicles. This easement (1947 easement) originates in lot 63, crosses lots 64, 62, 61, 60, 59 and ends in lot 58. These lots are all north of and adjacent to the primary easement. Prior to 1989, appellant owned lot 58 which is located at the bottom of the grade. On October 18, 1989, appellant sold this lot to Pete Rolfe who was not made a party to this action.

Appellant filed a three count petition, and in Count I alleged that a stone wall and fence extends approximately ten feet from the edge of the Loehrs' property onto the primary easement. He also alleged the Loehrs park their vehicles on the primary easement and use this and two other "walk" easements in the subdivision for motor vehicle access to their property. Appellant alleged further that Sondlo erected a fence and concrete block extension which obstructs the primary easement and that Sondlo also uses this and two other "walk" easements for motor vehicle access to his property. Appellant asked for a declaration that he has the right to use the following easement for motor vehicle access to his property: beginning in lot 41 at Ridge Road, proceeding generally south down a twenty foot walk easement located on lot 41; proceeding generally east upon another twenty foot walk easement which is adjacent to lots 41, 50 and A; proceeding generally east along the primary easement; and

terminating at the eastern most point of the primary easement adjacent to lots 58 and B. With the exception of Rolfe, appellant named as defendants other property owners whose lots are adjacent to the easements at issue.[1] In Count II, appellant sought the establishment of a private road pursuant to § 228.342 RSMo Cum.Supp.1993. Appellant alleged in Count III that he and his predecessors in title had exclusively occupied and possessed a portion of the property on lot 54, which comprises a triangular tract lying east of and including the pathway, for more than ten years.

After appellant presented his case-in-chief, the trial court dismissed Count III of his petition. The court subsequently entered findings of fact, conclusions of law and judgment denying appellant the relief he requested in Counts I and II. The following findings and conclusions are relevant for purposes of this appeal: 1) according to the plat there is a twenty foot easement (primary easement) that allows walkway access to and from appellant's lots, and there is no motor vehicle access to appellant's lots by that easement; 2) although the Loehrs and Sondlo have partially obstructed the primary easement, these obstructions have not unreasonably obstructed appellant's walkway access to his property over this easement; 3) the walking access to appellant's property does not meet his reasonable needs for ingress and egress to and from his property; 4) there was no evidence of obvious benefit to the dominant estate and burden to the subservient portion at the time of conveyance, relative to vehicular traffic or any evidence of reasonable necessity for the easement other than through lot 58 which appellant voluntarily relinquished thereby creating lack of access; 5) the evidence reveals that the roadway easement to appellant's property should be through lot 58 and connect with the 1947 easement, appellant failed to join the owner of lot 58 and the court lacks jurisdiction over the necessary parties to grant either an ease-

ment by implication or of strict necessity which are supported by the evidence. Appellant appeals certain findings and conclusions of the trial court and its dismissal of Count III.[2]

The trial court's judgment or decree will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. We defer to the trial court's resolution regarding credibility of witnesses. Rule 73.01(c).

In his first point, appellant argues the trial court erred in finding the Loehrs' and Sondlo's partial obstructions of the primary easement did not unreasonably obstruct appellant's walkway access over this easement. We first address the stone wall and fence which extends ten feet from the Loehrs' property onto the primary easement. It appears from Karen Loehr's testimony that there is no dispute that the fence and stone wall does extend approximately ten feet onto the primary easement.

■ When a structure blocks or intrudes upon an easement, the court considers what is essential to fulfillment of the purpose and intent of the easement and whether the obstruction destroys or substantially diminishes the use and enjoyment of the easement. See RFS, Inc. v. Cohen, 772 S.W.2d 713, 716–17 (Mo.App.1989). The rule is somewhat different for fences. If, as in this case, the exclusion of the erection of a fence is not specifically set out in a grant or easement then the court considers the following factors: 1) the purpose for which the grant was made; 2) the intention of the parties as gleaned from the circumstances surrounding the grant; 3) the nature and situation of the property; and 4) the manner in which the easement is used. Moschale v. Mock, 591 S.W.2d 415, 421 (Mo.App.1979). The Loehrs contend the rule regarding fences is applicable in this case. The photographic evidence

---

1. The trial court entered default judgments against certain other defendant lot owners.

2. The Loehrs and Sondlo filed separate briefs. The Loehrs made a motion to strike thirty-eight documents contained in appellant's legal file. The motion is sustained as to the subpoenas, filing memorandum, appellant's request for the issuance of amended summons, request for extension of time, amended summonses, alias summons and alias summons and return. Rule 81.-12(b). We overrule the Loehrs' motion as to the remaining documents.

shows that most of the fence sits on the stone wall. Regardless, both rules require review of the intent and purpose of the easement.

■ The plat shows that without the primary easement several adjacent lots would be landlocked. Accordingly, the purpose of the easement is for ingress and egress to the public road. The easement is located among several trees and it can be inferred that the Williams intended in part to provide a wide access to accommodate the surroundings. Reducing the twenty foot easement to ten feet substantially diminishes the use of the easement and is inconsistent with the reason the easement was created. The trial court's finding that the fence and stone wall does not unreasonably obstruct appellant's access is reversed.

The Loehrs' parked vehicles and Sondlo's fence and concrete blocks are more problematic. Appellant testified that the Loehrs park their vehicles in such a manner that in combination with the wall and fence the primary easement is completely blocked. Karen Loehr testified that after she and her husband park their vehicles there is still ten or fifteen feet of access remaining on the primary Easement. Appellant testified that Sondlo's fence and concrete blocks are extended on about one-half of the primary easement. Sondlo testified that the blocks are only on the edge of the primary easement. Because the trial court found that none of the obstructions, including the Loehrs' fence and stone wall, unreasonably obstruct appellant's access, it is unclear whether the court believed the Loehrs' vehicles and/or Sondlo's fence and blocks extended ten feet onto the primary easement. Given the conflicting testimony, we must remand to the trial court for findings regarding how far the Loehrs' vehicles and Sondlo's fence and blocks extend onto the primary easement. If the court finds that the vehicles and/or fence and blocks extend ten feet onto the primary easement, then judgment should be entered declaring that the fence and blocks extending ten feet onto the primary easement should be removed. If they merely lie on the edge of or extend a few inches onto the primary easement, it cannot be

found that this mandates removal. *Hubert v. Magidson*, 243 S.W.2d 337, 342–43 (Mo.1951).

The trial court's finding that the Loehrs' fence and stone wall does not unreasonably obstruct appellant's access to his property is reversed. We remand for further findings regarding the Loehrs' vehicles and Sondlo's fence and concrete blocks.

■ We next consider appellant's proposed use of the primary easement which is the subject of appellant's points two through eight. Appellant testified he wanted to have the obstructions removed and to construct a road of gravel and maybe later concrete. Appellant also testified as to the difficulties he encounters in day-to-day living because of lack of motor vehicle access to his home. These difficulties include problems in carrying groceries to his home, navigating the easement at night, carrying materials for his current remodeling of the house and inability to have visitors. The trial court found appellant's walking access did not meet his reasonable needs for ingress and egress to and from the property. There is substantial evidence to support the court's finding.

The court concluded that appellant was entitled to a road easement but found that the establishment of a easement should be through lot 58 and connect with the 1947 easement and not upon the primary easement. In point six, appellant argues in part that the trial court erred in determining that the grantors of the primary easement intended to prohibit motor vehicle access to the public road. According to appellant, implicit in the court's finding that his access should be through lot 58 on the 1947 easement, is that he has a right to cross the primary easement from lot B to lot 58 with his motor vehicle. Appellant contends if this is true then he has the right to use all of the primary easement for motor vehicle access. We must first review whether the primary easement is limited only to pedestrian use. Appellant testified that both the Loehrs and Sondlo currently drive their vehicles on a portion of the primary easement and other "walk" easements. Karen Loehr testified during cross-examination that she and her husband park their vehicles on at least a portion of one of the walk easements. Sond-

lo testified that he used some of the walk easements for access. The mere fact that subdivision residents drive their motor vehicles on the walk easements does not mean that they have a legally enforceable right to do so.

On first review, the word "walk" would appear to limit the easement's use to pedestrians. The Loehrs, however, forthrightly admit the plat "does not speak to the use of the walk" and state the general rule which is applicable where a way is reserved or granted without limitation. The rule is provided in *Kelly v. Schmelz,* 439 S.W.2d 211, 213 (Mo.App.1969):

> Missouri follows the rule as set out in 28 C.J.S. Easements § 87, pages 766–767: '... where a way is granted or reserved without limitation as to its use, it will not necessarily be confined to the purpose for which the land was used at the time the way was created, but may be used for any purpose to which the land accommodated by the way may naturally and reasonably be devoted.... The grantee is entitled to vary his mode of enjoying the same, and from time to time avail himself by modern inventions if by so doing he can more fully exercise and enjoy or carry out the object for which the way was granted.'

*See Anderton v. Gage,* 726 S.W.2d 859, 864 (Mo.App.1987).

■ If the plat contained language specifically limiting the easement to use by pedestrians then permitting motor vehicle use would be an impermissible abridgement of the easement. *Gerber v. Appel,* 164 S.W.2d 225, 228 (Mo.App.1942), *quashed in part, State ex rel. Appel v. Hughes,* 351 Mo. 488, 173 S.W.2d 45 (1943). In *Gerber,* the deed at issue provided that the "[r]ight of way shall be used only as a walk for pedestrians." The plat in the present case, however, does not specifically limit the easement's use to pedestrians. Absent a provision which specifically limits an easement's use, we are hesitant to impose such a restriction. Any doubt concerning an easement's scope should be resolved in favor of the free and untrammelled use of the land. *Robert Jackson Real Estate Co. v. James,* 755 S.W.2d 343, 346 (Mo.App. 1988).

■ As previously discussed, review of the plat reveals that the purpose of the primary easement was to provide ingress and egress for the adjacent lot owners. Without this easement, several lots would, according to the plat, be landlocked. In construing plats, we are not limited to the written words but should also consider the outlines of the plat. *Anderton,* 726 S.W.2d at 863. The plat imposes restrictions, with four exceptions, for the building of not more than one house per lot. Accordingly, the Williams considered the possibility of homes being constructed on the lots which are located at the bottom of the grade. The plat shows that the owner of lot 58 would have to walk approximately 600 feet to gain access to his/her house from Ridge Road. In addition, all of the "walk" easements are at least twenty-feet wide which provides support for the proposition that the William's did not intend to limit the primary easement to pedestrians but rather contemplated motor vehicle access. Even if written words are not ambiguous, "we may consider the circumstances existing at the time they were written to interpret their meaning." *Heigert v. Londell Manor, Inc.,* 834 S.W.2d 858, 867 (Mo.App.E.D.1992). Under these circumstances, we do not find that the Williams intended to limit the primary easement to use only by pedestrians. The rule as provided in *Kelly* is, therefore, applicable. Permitting appellant to use the primary easement for motor vehicle access allows him to more fully carry out the object for which the way was granted, namely ingress and egress. Laying gravel, paving and driving motor vehicles on the primary easement does not alter the character of the easement, as intended by the Williams.

■ The Loehrs emphasize the drainage problems which they fear will result if appellant is permitted to construct a road on the primary easement. The evidence demonstrates that the primary easement is located on a steep grade. Both Sondlo and Karen Loehr testified regarding their concern that building a road on the primary easement would cause drainage problems. Appellant testified he would provide drainage culverts. If appellant derives the only benefit from construction of the road, then he is responsi-

ble for the maintenance, repair and any damage which might occur. *See Gnau v. Union Elec. Co.,* 672 S.W.2d 142, 145 (Mo.App.1984).

The trial court erroneously applied the law by declaring that appellant should use the 1947 easement. We order judgment be entered declaring that appellant has the right to construct a road and use the primary easement for motor vehicle access.

In his ninth point, appellant argues the trial court erred in granting Sondlo's motion to dismiss Count III of his petition. Under this point, appellant first contends the trial court erred in failing to appoint an interpreter for a deaf witness, Kenneth Dardick.

Section 476.060 RSMo 1986, provides that the court may appoint interpreters and translators to interpret the testimony of witnesses. According to appellant, the enactment of the American with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., justifies modification in the present case of the rule that the trial court has discretion regarding whether to appoint an interpreter. *Kley v. Abell,* 483 S.W.2d 625, 627 (Mo.App.1972).

After appellant's first witness testified the following proceedings occurred:

Mr. Gephardt (appellant's counsel): Your Honor, my next witness I would like to call is Ken Dardich, he's a deaf person. I don't believe the interpreter is here yet.

The Court: Do you have any other witnesses you can proceed with?

Mr. Gephardt: The only other witness I have is the plaintiff and he'll be extensive.

The Court: That's okay, we'll get started with the plaintiff and when the interpreter arrives, we'll take a break.

Mr. Gephardt: I'll call Robert Copanas [appellant] to the stand, please.

  *   *   *   *   *   *

The Court: We'll call a short recess. (Whereupon, the Court stood in temporary recess)

The Court: You may continue.

Mr. Gephardt: I would like to interrupt the testimony of this witness [appellant], Mr. Dardich [sic] has time constraints.

The Court: Any objection?

Mr. Jones (Loehrs' counsel): No objection.

Dardich proceeded to testify and asserted that he could read lips "a little bit." During cross-examination, he stated that if he did not understand questions he would inform counsel. Certain questions were presented in writing and are reflected in the transcript.

It appears the court was waiting for the interpreter to arrive but Dardich was unable to wait due to "time constraints." Without deciding the merit of appellant's contention, the record does not reflect that the trial court refused to appoint an interpreter.

Appellant also contends he made a *prima facie* case of either adverse possession or prescriptive easement and therefore the trial court erred in dismissing Count III. The necessary elements to establish title to property by adverse possession are: (1) possession must be hostile and under claim of right; (2) possession must be actual; (3) possession must be open and notorious; (4) possession must be exclusive; and (5) possession must be continuous for the requisite period, ten years. *Langston v. Williams,* 820 S.W.2d 736, 737 (Mo.App.1991) (citations omitted); § 516.010 RSMo 1986. A party claiming title by adverse possession has the burden of proving each necessary element. *Langston,* 820 S.W.2d at 737. To establish a prescriptive easement, a party must prove that the use of the property has been continuous, uninterrupted, visible and adverse for a period of ten years. *Tamko Asphalt Products v. Arch Associates,* 830 S.W.2d 434, 438 (Mo.App.E.D.1992). A party must prove each of the elements by clear and convincing evidence. *Id.* There is a distinction between the theories of adverse possession and easement by prescription. *Curran v. Bowen,* 753 S.W.2d 940, 943 (Mo.App.1988). Adverse possession deals with possession of property whereas an easement by prescription deals with use of the property. *Id.*

Count III of appellant's petition is based on possession of the property on lot 54 and not on use. Appellant, however, did present testimony, without objection, regarding the use of the property and we will consider both adverse possession and easement by prescription. Rule 55.33(b). To

establish adverse possession or easement by prescription, a party must show that the possession or use was continuous for ten years. A fence, appellant's cistern and a pathway leading from the primary easement to appellant's house is located on the property at issue on lot 54. In dismissing Count III, the trial court stated in part that appellant failed to establish a continuous ten year period. We agree.

In his petition, appellant alleged that Sondlo fenced off the path on or about January, 1987. Accordingly, appellant must demonstrate that the use or possession occurred for a continuous ten year period prior to 1987. Appellant purchased his property from Dardich in 1984. Dardich testified he purchased lot 55 in 1980. Even assuming his testimony established the requisite elements, this, along with appellant's alleged possession and use from 1984 to 1987, only covers a seven year period. Appellant relies on his testimony and the existence of the path, fence and cistern.

In response to a question regarding when he began using the pathway, appellant testified "back in the 70's I was up there and had use of this pathway into the house. So I would say as far back as, probably, 1974 I had used this path a time or two." Even assuming the trial court found appellant credible, this testimony does not establish that the use was continuous, uninterrupted or adverse for a period of ten years as required to establish a prescriptive easement. In addition, the mere existence of the path, fence and cistern cannot be found to be sufficient to establish the possession was exclusive or the use was uninterrupted and adverse for a continuous ten year period. Point denied.

The trial court's judgment is affirmed in part, reversed in part and remanded.

SIMON, P.J., and KAROHL, J., concur.

EXHIBIT A

INITIALS: