**BARRY SIMON DEVELOPMENT, INC., (formerly the Lenore Ross Revocable Trust,) Plaintiff/Respondent,**

v.

**Laurie HALE, et al., Defendants/Appellants.**

**No. ED 87452.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 24, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 2006.

Application for Transfer Denied
Jan. 30, 2007.

Jason M. Rugo, Stephen L. Kling, Jr., Clayton, MO, for appellant.

Robert J. Selsor, Graham L.W. Day, Clayton, MO, for respondent.

ROY L. RICHTER, Presiding Judge.

Laurie Hale, et. al. ("Residents") appeal the trial court's grant of summary judgment based on a finding that an easement existed over the common ground of Residents' subdivision. We affirm.

## I. BACKGROUND

Eagle Crest Estates Subdivision ("Eagle Crest"), a single-family residential subdivision, is located south of Wild Horse Creek Road in the City of Chesterfield ("City"). Residents are all owners of lots and homes in Eagle Crest. Respondent Barry Simon Development, Inc. ("Simon") owns approximately 39 acres to the south of Eagle Crest ("Property"). Simon plans to develop this property into a 34 lot residential subdivision named Fox Hill Farms. The primary means of ingress-egress for Fox Hill Farms will be a fifty foot wide access easement ("Access Easement") over Eagle Crest common ground originating at Eagle Bluff Court.

In 1997, to aid development of Eagle Crest, the City enacted an ordinance creating a planned environment unit ("PEU"). A PEU is a zoning procedure that provides flexibility by adjusting development regulations to particular site conditions. An attachment to the ordinance provided that "a fifty (50) foot access easement shall be provided to the landlocked property to [sic] south, as directed by the City of Chesterfield." This attachment also indicated that Eagle Bluff Court would terminate in a permanent cul-de-sac.

In 1999, Eagle Crest, L.L.C. executed a site development plan depicting a 50 foot wide access easement over Eagle Crest common land to the Property to the south. In 2002, plat two of Eagle Crest was executed, also depicting the same easement. Lawless Homes, Inc. owned the common land at this time. Lawless Homes, Inc. executed a general warranty deed of Eagle Crest common land to the Eagle Crest Subdivision Trustees.

In 2003, Simon entered into a land purchase option agreement to purchase the 39 acres to the south of Eagle Crest from the Lenore S. Ross Revocable Trust and the Amy Wilcox Revocable Trust in order to develop Fox Hill Farms. Various residents of Eagle Crest opposed Simon's proposed development and made their opposition known at the City's Planning and Zoning Commission meetings. Having learned that Eagle Bluff Court would serve as primary ingress-egress to Fox Hill Farms, Eagle Crest residents requested that the City's Planning and Zoning Commission remove the Access Easement. The Planning and Zoning Commission instead recommended approval of Fox Hill Farms.

Because Simon's purchase of the 39 acres was contingent on resolving the access issue, the Lenore S. Ross Revocable Trust and the Amy Wilcox Revocable Trust sought a declaratory judgment that the Access Easement was validly created, as well as damages based on tort theories from Residents. Residents filed counterclaims asserting the Access Easement was not validly created. Later, Simon intervened in the lawsuit as a plaintiff.[1] Before resolution of the action, Simon exercised

---

1. The trial court granted summary judgment in Residents' favor on various tort claims before Simon intervened. After Simon intervened, the original plaintiffs, the trusts, dismissed their remaining claims.

its option and closed on the 39 acre property, waiving all contingencies, including its access contingency.

Simon and Residents both filed motions for summary judgment. After a hearing on both motions, the trial court granted Simon's motion for summary judgment and denied Residents' cross-motion for summary judgment, finding that the Access Easement existed. Residents appeal.

## II. DISCUSSION

We review a grant of summary judgment de novo. *ITT Commercial Finance v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. *Id.*

Residents present five points on appeal. In the interest of clarity and brevity, we address Residents first two points together and each subsequent point in turn. In their first point, Residents claim that under Missouri common law, City ordinances and subdivision documents, an easement benefiting non-residents cannot exist over common land. In their second point, Residents contend there can be no easement because: all drawings of the Access Easement were vague; the party that executed plat two did not own any property depicted in the plat; the site development plan could not create the Access Easement; and no other instrument validly created the Access Easement. We disagree on all accounts.

■ In order to address these points, we must first consider whether the 1999 Eagle Crest site development plan created the Access Easement. We find that it did. A site development plan may constitute a plat. *Hoag v. McBride & Son Inv. Co., Inc.,* 967 S.W.2d 157, 168–69 (Mo.App.

E.D.1998). Although the Missouri legislature has not defined "plat" by statute, courts have defined the term by referring to its dictionary definition at the time of enactment. *Hoag,* 967 S.W.2d at 169 (citing *Asbury v. Lombardi,* 846 S.W.2d 196, 201 (Mo. banc 1993)). "Webster's Dictionary defines 'plat' as 'a precise and detailed plan showing the actual or proposed divisions, special features, or uses of a piece of land as a town or town site or a real estate subdivision.'" *Hoag,* 967 S.W.2d at 169 (citing Webster's Third International Dictionary (1961)). Moreover, in *Hoag,* the court held that a final development plan was a plat because it "thoroughly depicted the proposed subdivision and development of Riverwood and recites the special features and uses on particular parcels of land...." *Hoag,* 967 S.W.2d at 169.

■ Here, just as in *Hoag,* the site development plan depicts the subdivision development of Eagle Crest. Further, it recites special features and uses on particular parcels of land. We therefore find that the site development plan of Eagle Crest is a plat. A properly recorded and approved plat may constitute the legal description of a subdivision. Thus, we can look to the site development plan as the plat of Eagle Crest to determine whether the Access Easement exists. Any review of plat two is therefore rendered unnecessary. Consequently, we need not address Residents' assertion that the party that executed plat two did not own any property depicted on the plat.

■ Having decided that the site development plan is a plat showing the Access Easement, we next must evaluate the validity of the Access Easement. Easements are often created by plat. *Anderton v. Gage,* 726 S.W.2d 859, 862 (Mo.App. S.D.1987). Missouri law does not require

certain words to establish an easement. *Id.* at 863. "It is not essential that a plat expressly designate the purpose of an unmarked or an ambiguously marked area in a subdivision." *Id.* Courts are not restricted by the words and markings on a plat and may "give effect to the meaning and intent exhibited by the outlines of the plats." *Anderton,* 726 S.W.2d at 863 (citing *City of St. Louis v. Koch,* 335 Mo. 991, 74 S.W.2d 622, 623 (1934)).

■ Here, the site development plan, as a plat, evinces an intent to create the Access Easement. Contrary to Residents' assertion of vague easement notations, the site development plan unambiguously designates the strip of land at issue as a "50′ Wide Access Easement" and shows it serving the Property to the south. Further, any ambiguity is removed by the site development plan's incorporation of the City ordinance enacted in anticipation of the development of Eagle Crest. The ordinance, through its attachment, states that "a fifty (50) foot access easement shall be provided to the landlocked property to south [sic], as directed by the City of Chesterfield," and approval of the Eagle Crest PEU was "subject to revising conditions relative to . . . access to the property to the southeast." The law and the facts do not support Residents' allegation that demarcation of the Access Easement was vague.

Moreover, common land is not inviolable as Residents suggest. Although Residents assert that Missouri common law, City ordinances and subdivision documents dictate that an easement benefiting non-residents cannot exist over common land, Residents present no persuasive Missouri law to support their assertion. While Residents correctly state that under Missouri law, namely *Cozart v. Green Trails Mgmt. Corp.,* 501 S.W.2d 184, 187–88 (Mo.App. E.D.1973), common property is owned by all subdivision lot owners, *Cozart* is inapposite. In *Cozart,* the court found that trustees of a subdivision had no power to grant an easement in the absence of any express authority to do so in the subdivision indenture. *Id.* at 187. Here, the Eagle Crest common land has been burdened with the Access Easement since its creation.

■ In addition, we decline to review Residents' contentions relating to local ordinance or subdivision indenture. "If a local law either prohibits what state law allows, or allows what state law prohibits, then a local law is in conflict with the state law and, therefore, preempted." *Borron v. Farrenkopf,* 5 S.W.3d 618, 622 (Mo.App. W.D.1999). Because Missouri law supports the creation of the Access Easement over Eagle Crest common land, any conflicting local ordinances or subdivision indenture is preempted. Points denied.

In their third point, Residents contend that the court erred in granting summary judgment because under the "stranger to the deed" doctrine, Simon is a "stranger" to Eagle Crest subdivision plat and site development plan, and therefore, cannot claim use of any easements depicted on such plats or plans. We disagree.

■ Missouri courts have not adopted the "stranger to the deed" doctrine and we decline to do so now. Further, Residents request that we not only adopt this doctrine but also that we extend its reasoning to plats. To adopt and expand such a doctrine would unnecessarily alter the law. Point denied.

In their fourth point, Residents argue the trial court erred in granting summary judgment because the existence of the Access Easement conflicts with a provision within the attachment to the City ordinance. We disagree.

■ The language of the attachment to the ordinance states that Eagle Bluff Court shall terminate in a "permanent cul-de-sac on this site." In interpreting these words, we must be cognizant of all parts of the ordinance. Every word, clause, sentence and section of an ordinance or statute must be given some meaning unless it is in conflict with the legislative intent. *Anderson v. Deering,* 318 S.W.2d 383, 386 (Mo.App.1958). It is our duty to effectuate the intent of the city and give a construction to each section in harmony with the rest of the ordinance. *Trio Mobile Home Park, Inc. v. City of St. Charles,* 390 S.W.2d 432, 435 (Mo.App.1965).

The facts contradict Residents' contention that the ordinance attachment's provision regarding the permanency of the cul-de-sac invalidates the existence of the Access Easement. In accordance with giving meaning to all parts of the ordinance and harmonizing each part with the whole, we find the Access Easement is valid, and broadly construe the provision regarding the cul-de-sac. Both the fact that multiple plats including the site development plan depict the Access Easement as well as the fact that parts of the attachment to the City ordinance reference the Access Easement reveal an intent that the easement exist.

Moreover, Section m. of the attachment to the City ordinance specifically states, "A fifty (50) foot access easement shall be provided to the landlocked property to [sic] south, as directed by the City of Chesterfield." Even though section l. of the attachment states, "the street crossing the floodway shall be terminated as a permanent cul-de-sac on this site," in light of the notations on the site development plan and the fact that Eagle Bluff Court currently ends in an empty lot, Section m more closely matches the City's intent. Point denied.

In their fifth and final point, Residents argue that Simon is estopped from claiming the existence of the Access Easement because Simon failed to note its interest in the Access Easement when homeowners purchased lots on Eagle Bluff Court. We disagree.

■ Residents' estoppel argument is misplaced. Estoppel does not apply to these facts and equity does not justify the invalidation of the Access Easement. Estoppel, disfavored by courts, consists of three elements: (1) an admission, statement, or act by the person to be estopped that is inconsistent with the claim that is later asserted and sued upon; (2) an action taken by a second party on the faith of such admission, statement or act; and (3) an injury to the second party which would result if the first party is permitted to contradict or repudiate his admission, statement or act. *Tinch v. State Farm Ins. Co.,* 16 S.W.3d 747, 751 (Mo.App. E.D. 2000). Here, Simon has made no admission, statement or act that is inconsistent with a claim later asserted and sued upon. Simon owed no duty to homeowners situated on Eagle Bluff Court to inform them of its easement. It would be inequitable and inappropriate to prevent Simon from making use of its valid easement. Consequently, Simon is not estopped from asserting its rights. Point denied.

### III. CONCLUSION

The judgment is affirmed.

KATHIANNE KNAUP CRANE and SHERRI B. SULLIVAN, JJ., Concur.